**TRUCK INSURANCE EXCHANGE,**
**Plaintiff–Appellant,**

v.

**EAGLE RIVER WATER AND**
**SANITATION DISTRICT,**
**Defendant–Appellee.**

**No. 99CA2428.**

Colorado Court of Appeals,
Div. II.

Dec. 21, 2000.

The Law Offices of Samuel G. Livingston, LLC, Samuel G. Livingston, Golden, CO, for Plaintiff–Appellant.

Halaby Cross & Schluter, Theodore S. Halaby, Andrew J. Carafelli, Denver, CO, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

In this subrogation claim to recover expenses for repair of the property of its insured, plaintiff, Truck Insurance Exchange, appeals from the entry of summary judgment in favor of defendant, Eagle River Water and Sanitation District. We affirm.

The insured's residence was extensively damaged as a result of a water leak. The leak occurred at a "corner horn" affixed to the main water service line and another service line that led away from the corner horn to a water meter. The meter was owned by defendant and located in the insured's home.

Plaintiff paid its insured for repair of the damage and then filed this action against defendant seeking recovery of the repair cost.

In the trial court, the parties agreed that this dispute was governed by the contract entered into between defendant and the insured, as set forth in the Eagle River Water and Sanitation District Rules and Regulations. According to the contract, defendant was responsible for maintaining the water meter and liable for any damages caused by a "defective water meter." On the other hand, leaks or breaks in the water service line were the responsibility of the property owner.

In relevant part, the contract read as follows:

3.5.1 *Ownership of Water Facilities.* For water, the District owns and is responsible for the maintenance of the water service line up to and including the curb stop valve or the customer's property line or edge of easement, whichever is closer to the water main. The customer is responsible for the maintenance of the remaining portion of the service line serving his property. The principle of ownership shall not be changed by the fact that the District may construct, finance, pay for, repair, maintain or otherwise affect the customer's service line.

. . . .

3.5.3 *Ownership of Water Meter.* Each water meter shall become and is the property of the District. Ownership shall remain valid whether the meter is installed, financed, paid for, repaired or maintained by another person or whether the meter is located on a privately owned and maintained service line.

. . . .

4.4.3 *Water Meters.* All connections to the District's water system shall include a water meter. . . . The District shall install the initial meter and shall have the right to test, remove, repair or replace any and all water meters. . . . Each customer is responsible for notifying the District if his water meter is operating defectively. If any meter is suspected to be defective, the District shall diligently pursue repair or replacement of said meter at the District's expense unless the defect is a result of negligence or tampering by the owner. . . .

. . . .

4.4.6 *Repair of Service Line.* Leaks or breaks in the water service line shall be repaired by the property owner immediately upon discovery. . . . In addition, the District shall have the right to effect the repair. . . .

The parties filed cross-motions for summary judgment, each asserting that, under the contract, the other party was responsible as a matter of law for the damages caused by the leak. Because the parties agreed that defendant was liable for the damages only if caused by a faulty "water meter," the disputed issue was the definition of that term.

Plaintiff claimed that, under the contract, a "water meter" consisted of the meter itself and all installation equipment, including the corner horn on the service line at which the leak occurred. Defendant claimed that a "water meter" consisted solely of the instrument used to measure the flow of water. The trial court determined that the term "water meter" was unambiguous and agreed with defendant's interpretation.

■ Plaintiff now contends that the trial court erred in determining that defendant was responsible only when the meter itself was defective or malfunctioning. We disagree.

■ The interpretation of a contract is a question of law, *Home Shopping Club, Inc. v. Roberts Broadcasting Co.,* 961 P.2d 558 (Colo.App.1998), as is the determination whether a contract is ambiguous. *TerraMatrix, Inc. v. United States Fire Insurance Co.,* 939 P.2d 483 (Colo.App.1997). An appellate court may review the interpretation of a contract de novo. *Werner v. Baker,* 693 P.2d 385 (Colo.App.1984).

■ In interpreting a contract, words and phrases should be given their plain and ordinary meaning. *In re Marriage of Tho-*

*mason*, 802 P.2d 1189 (Colo.App.1990). In order to effectuate the parties' intent, a contract must be construed as a whole, and effect must be given to every provision if possible. *TerraMatrix, Inc. v. United States Fire Insurance Co., supra.*

The common definition of a "meter" is "an instrument for measuring." *Random House Webster's Unabridged Dictionary* 1209 (2d ed.1998). Although the contract here did not expressly define "water meter," in Appendix B it required that the meter be "bronze bodied, Sensus SRII, with a touch-read pad," and thus the contract implied that a "water meter" would be such a measuring instrument. Accessory piping, such as where the leak occurred here, is not such an instrument for measuring water flow.

In addition, § 4.4.3 of the contract, addressing the installation and maintenance of "water meters," plainly set forth that defendant only had the obligation and the "right to test, remove, repair, or replace" a "water meter" when it is "operating defectively." On the other hand, § 4.4.6 of the contract discussed service lines in terms of "leaks and breaks" and clearly set forth that repair of such "leaks and breaks" was the financial obligation of the customer.

Furthermore, the contract specified that the customer's responsibility included the pipes installed by defendant for the purpose of routing flow to a "water meter." Such pipes were the source of the leak here. Whereas under § 3.5.3 of the contract defendant owned the "water meter," even if it was located on a private service line, in contrast, § 3.5.1 of the contract required that the customer be responsible for any repairs of the service line, regardless whether defendant may "construct, finance, pay for, repair, maintain or otherwise affect the customer's service line."

Thus, we conclude that the term "water meter" referred not to the piping connected to the meter when it was installed, but only to the meter instrument. Consequently, we agree with the trial court that, reading the relevant provisions of the contract as a whole, the intent of the parties was that defendant be responsible for repair only when the meter itself malfunctioned and not when piping around the meter leaked.

Because of our disposition, we need not address plaintiff's other contentions.

The judgment is affirmed.

Judge JONES and Judge VOGT concur.