24CA0545 Hatkoff v Accutrend 11-21-2024 
 
COLORADO COURT OF APPEALS 
 
 
Court of Appeals No. 24CA0545 
Arapahoe County District Court No. 22CV30705 
Honorable Thomas W. Henderson, Judge 
 
 
Reed A. Hatkoff, 

 
Plaintiff-Appellant, 
 
v. 
 
Accutrend Data Corporation, 
 
Defendant-Appellee. 
 
 
ORDER AFFIRMED 
 
Division VI 
Opinion by JUSTICE MARTINEZ* 
Welling and Bernard*, JJ., concur 

 
NOT PUBLISHED PURSUANT TO C.A.R. 35(e) 
Announced November 21, 2024 
 
 
Lewis Roca Rothgerber Christie LLP, Darren J. Lemieux, Elizabeth Michaels, 

Denver, Colorado, for Plaintiff-Appellant 
 
Wysocki Law Group P.C., Jeremy S. Wysocki, Zachary Crow, Denver, Colorado, 

for Defendant-Appellee 
 
 
*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. 
VI, Â§ 5(3), and Â§ 24-51-1105, C.R.S. 2024. 
 

 
1 
Â¶ 1 Plaintiff Reed A. Hatkoff appeals a district court order granting 

summary judgment in favor of defendant Accutrend Data 
Corporation. We affirm. 

I. Background 

Â¶ 2 Hatkoff and Vicki Reavis formed Accutrend in 1999. Each 

received 5,000 of the 10,000 total shares of common stock in 
Accutrend. 
Â¶ 3 On November 7, 2001, Hatkoff and Accutrend entered into a 

Buy-Out Agreement. The Buy-Out Agreement consisted of a Stock 

Redemption Agreement, a Stock Pledge Agreement, and a 
Promissory Note.

1

 

Â¶ 4 The Stock Redemption Agreement provided that Hatkoff would 

âsell, assign, convey and transferâ to Accutrend the 5,000 shares of 
âthe no par value common stockâ of Accutrend that Hatkoff owned 

in exchange for the purchase price of $717,070.14. The purchase 
price was payable by Accutrendâs delivery of a Promissory Note, 

secured by the Stock Pledge Agreement. The Stock Redemption 
Agreement further provided that the closing would occur on 
 

1

 The Buy-Out Agreement also incorporated a consulting agreement 
that is not relevant to the questions before us. 

 
2 
November 7, 2001, at which time Hatkoff was required to, as 
relevant here, â[s]ell, assign, convey, transfer and deliver to 

[Accutrend]â his 5,000 shares. 

Â¶ 5 The Stock Pledge Agreement required Accutrend to complete it 

as a condition precedent to closing the Stock Redemption 
Agreement. The Stock Pledge Agreement provided that 
â[Accutrend], as an accommodation, has agreed to pledge to 
[Hatkoff] five thousand (5,000) shares of [Accutrendâs] no par value 
common stock as collateralâ for the Promissory Note. The parties 
thus agreed to a âgrant of security interest.â The Stock Pledge 

Agreement additionally provided Hatkoff with remedies in the event 
of a default on the Promissory Note by Accutrend. 

Â¶ 6 Accutrend executed the Promissory Note dated November 7, 

2001, in the original principal amount of $717,070.14, payable to 
Hatkoff. Pursuant to the terms and conditions of the note, 
Accutrend agreed to make monthly payments of $10,648.09, 
beginning on January 1, 2022, and to continue until the 
Promissory Note was fully paid, âprovided, however, if not sooner 
paid, the entire principal amount outstanding and accrued interest 
thereon, shall be due payable on December 1, 2008.â According to 

 
3 
the Promissory Note, a default would occur if Accutrend failed to 
make a monthly payment within ten calendar days following the 
due date for the payment. 
Â¶ 7 In connection with the Buy-Out Agreement, Accutrend 

delivered to Hatkoff a stock certificate (Stock Certificate No. 3). 
Stock Certificate No. 3 stated that the shares in Accutrend 
represented by the certificate âare subject to further restrictionâ as 
set forth in the Stock Pledge Agreement dated November 7, 2001. 
Â¶ 8 Accutrend defaulted on the note as of 2009 at the latest. 

Â¶ 9 On December 1, 2009, Hatkoff sent Reavis a letter asserting 

Accutrend had been in default under the Buy-Out Agreement since 
2007 because Accutrend had defaulted on the Promissory Note, and 
that Hatkoff would take further action if the default was not 
resolved by the end of 2009. Neither Accutrend nor Reavis 
responded to Hatkoffâs December 1, 2009, letter. 
Â¶ 10 On November 14, 2019, Hatkoff sent Reavis another letter. In 

that letter, Hatkoff asserted that Accutrendâs debt was âway past 

the statutory limit to bring an action to collect,â but that âthe stock 
certificate and ownershipâ were still valid. Hatkoff thus claimed he 

owned half of the company, and he âwould settle for the [December] 

 
4 
2009 balance without any accruing interest.â Again, neither 

Accutrend nor Reavis responded to Hatkoffâs November 14, 2019, 

letter. 

Â¶ 11 Hatkoff filed suit against Accutrend on April 20, 2022. Hatkoff 

sought a declaratory judgment âthat [Accutrend] Certificate No. 3 is 
a valid stock certificate and that [Hatkoff] is the rightful owner of 
five thousand shares of common stock in [Accutrend] with the right 
to vote, execute proxies or receive distributions with respect to the 
Collateral Shares.â Hatkoff also sought a books and records 
inspection under sections 7-116-102 and -103, C.R.S. 2024. 
Â¶ 12 Accutrend moved for summary judgment, asserting that 

Hatkoffâs declaratory judgment claim had been barred since at least 

2011 under a two-year statute of limitations and his right to enforce 
the Promissory Note had been barred since at least 2014 under a 
six-year statute of limitations. 
Â¶ 13 The district court granted Accutrendâs motion. First, the court 

concluded that the Buy-Out Agreement unambiguously stated that 
Accutrend was to provide 5,000 shares to Hatkoff as security for the 
payment of the Promissory Note. Therefore, the court concluded 
Stock Certificate No. 3 represented secured collateral in Accutrend, 

 
5 
not a certificate of issued shares in Accutrend. The district court 
further concluded that Hatkoffâs claim was barred by the statute of 

limitations and Hatkoff was not entitled to equitable tolling. The 
district court later denied Hatkoffâs motion for reconsideration on 

the same grounds. Hatkoff now appeals the district courtâs order 

granting summary judgment in favor of Accutrend. 
II. Hatkoffâs Security Interest in Accutrend 

Â¶ 14 Hatkoff asserts that the district court erred by concluding that 

Stock Certificate No. 3 represented unissued shares of Accutrend, 

or alternatively, that the district court failed to resolve ambiguities 
in the Buy-Out Agreement. We disagree. 
A. Additional Relevant Facts 

Â¶ 15 The Buy-Out Agreement encompassed three documents: the 

Stock Redemption Agreement, the Stock Pledge Agreement, and the 
Promissory Note. These documents were executed by Hatkoff and 
Accutrend on November 7, 2001. 
Â¶ 16 Under the Stock Redemption Agreement, Accutrend agreed to 

pay Hatkoff $717,070.14 plus interest for his 5,000 shares of the 
company with payments due on the first of each month until the 
total plus interest was paid off, or when the Promissory Note 

 
6 
expired on December 1, 2008, at which time any outstanding 
balance was due. 
Â¶ 17 Under the Stock Pledge Agreement, consideration of 

Accutrendâs promise to pay the Promissory Note was supported by 

Accutrendâs issuance to Hatkoff of 5,000 shares of âauthorized but 

unissued no par value stockâ as âsecured collateral.â The Stock 

Pledge Agreement provided that if Accutrend defaulted on payment 
of the Promissory Note, Hatkoff could notify Accutrend to receive a 
new stock certificate for the 5,000 shares of no par value common 
stock. That agreement further required all ânotices, demands, and 

requests of any kindâ to be in writing, in accordance with the Stock 

Redemption Agreement. 

B. Standard of Review 

Â¶ 18 We review a district courtâs ruling on a motion for summary 

judgment de novo. Gibbons v. Ludlow, 2013 CO 49, Â¶ 11. 
Summary judgment is appropriate when there is no genuine issue 
as to any material fact and the moving party is entitled to judgment 
as a matter of law. Id.; see C.R.C.P. 56(c). We further review a 
district courtâs interpretation of a contract and whether that 

contract is ambiguous de novo. Rocky Mountain Health Maint. Org., 

 
7 
Inc. v. Colo. Depât of Health Care Polây & Fin., 54 P.3d 913, 919 

(Colo. App. 2001). 
C. Applicable Law 

Â¶ 19 âThe primary goal of contract interpretation is to determine 

and effectuate the intent and reasonable expectations of the 
parties.â Copper Mountain, Inc. v. Indus. Sys., Inc., 208 P.3d 692, 

697 (Colo. 2009). To determine the partiesâ intent, the court should 

examine the contract in its entirety and âgive effect to the plain and 
generally accepted meaning of the contractual language.â Id. 

Â¶ 20 Unless ambiguous, we enforce a contract according to its plain 

language. Id. A contract term is ambiguous if it is reasonably 

susceptible to more than one meaning, but the potential for more 
than one interpretation does not, in itself, create ambiguity. Rocky 

Mountain Health, 54 P.3d at 919. Mere disagreement of the parties 

does not necessarily indicate ambiguity, either. E. Ridge of Fort 

Collins, LLC v. Larimer & Weld Irrigation Co., 109 P.3d 969, 974 

(Colo. 2005). 
D. Analysis 

Â¶ 21 We conclude that the Buy-Out Agreement unambiguously gave 

Hatkoff a security interest in 5,000 unissued shares of Accutrend. 

 
8 
Â¶ 22 Hatkoff originally possessed 5,000 shares of Accutrend before 

the Buy-Out Agreement was effectuated. A corporation may issue 
shares authorized by its articles of incorporation, and these issued 
shares are outstanding shares until they are redeemed. See 
Â§ 7-106-103(1), C.R.S. 2024. Here, pursuant to the plain language 
of the Stock Redemption Agreement, Accutrend redeemed Hatkoffâs 
5,000 shares of no par value common stock of Accutrend in 
exchange for the delivery of the Promissory Note. This redemption 
closed on November 7, 2001, when Accutrend executed the 
Promissory Note. 
Â¶ 23 Meanwhile, the Stock Pledge Agreement granted Hatkoff a 

security interest in 5,000 shares of no par value common stock as 
collateral for the Promissory Note. And Stock Certificate No. 3 

specifically provided that the shares were âsubject to further 

restrictionâ as set forth in the Stock Pledge Agreement. 

Â¶ 24 Viewed in isolation, some of the language in Stock Certificate 

No. 3 could be read to grant Hatkoff a stock pledge in Accutrend, 

which would create an ambiguity. But we construe a contract as a 
whole with the goal of harmonizing its provisions so that none will 
be rendered meaningless. See Copper Mountain, 208 P.3d at 697. 

 
9 
Thus, even if one contractual provision read in isolation appears to 
create an ambiguity, we can resolve that ambiguity by referencing 
other provisions. See Travelers Ins. Co. v. Jefferies-Eaves, Inc., 442 

P.2d 822, 824 (Colo. 1968) (when the wording of a clause is 
susceptible to multiple interpretations, it is the duty of a court to 
examine the contract as a whole to determine if other provisions will 
resolve the ambiguity). 
Â¶ 25 Here, the terms of the Buy-Out Agreement can be harmonized 

by reading the Stock Pledge Agreement with Stock Certificate No. 3. 
Section 1.1 of the Stock Pledge Agreement specifies, as follows: 
As security for the obligations specific in 
Section 2 hereof, [Accutrend] hereby grants to 
[Hatkoff] . . . a security interest in and to five 
thousand (5,000) shares of [Accutrendâs] 
authorized but unissued no par value common 
stock (the âCollateral Sharesâ). 

Â¶ 26 As acknowledged by Hatkoff, section 1.2 provided for delivery 

of the âCollateral Sharesâ â as specifically defined in section 1.1 as 

authorized but unissued â by a stock certificate. Therefore, as we 
read the plain terms of the Buy-Out Agreement, Hatkoff was the 
owner of 5,000 authorized but unissued shares in Accutrend as 

 
10 
secured collateral for Accutrendâs debt.

2

 In turn, Stock Certificate 

No. 3 was a representation of these 5,000 authorized but unissued 

shares in Accutrend. Accordingly, the district court correctly 
determined the unambiguous meaning of the partiesâ agreement. 

III. Statute of Limitations 

Â¶ 27 Hatkoff asserts that the district court erred by measuring the 

accrual date from Accutrendâs default on the Promissory Note. 
Instead, he asserts that his claim accrued in March 2022 when 
Accutrend denied his shareholder status. We disagree. 
A. Additional Relevant Facts 

Â¶ 28 In February 2022, Hatkoff sent a books and records inspection 

demand to Accutrend. Accutrend responded to that demand on 
March 4, 2022. In its response, Accutrend indicated that Hatkoff 
âsold any ownership interest he held in [Accutrend] years agoâ and 
that Hatkoff was âno longer a shareholder of Accutrend.â 

 

2

 Indeed, Hatkoffâs 2009 letter recognized he had sold his interest in 

Accutrend and that the stock he possessed was secured collateral. 
However, in his 2019 letter, Hatkoff claimed he âwas always aware 

that [his] original ownership interest was intact and never conveyed 
or released,â and that he knew he âwas still an owner of half of the 
[Accutrend] stock.â 

 
11 
B. Standard of Review 

Â¶ 29 Whether the statute of limitations bars a particular claim is 

âusually a fact question.â Sulca v. Allstate Ins. Co., 77 P.3d 897, 

899 (Colo. App. 2003). However, where the facts relevant to a 
claimâs accrual are undisputed, we review a district courtâs 
application of the statute of limitations de novo. Pilmenstein v. 

Devereux Cleo Wallace, 2021 COA 59, Â¶ 48; Kovac v. Farmers Ins. 
Exch., 2017 COA 7M, Â¶ 13. We also review de novo a courtâs 

determination as to which statute of limitations controls a cause of 
action. Gunderson v. Weidner Holdings, LLC, 2019 COA 186, Â¶ 9. 
C. Applicable Law 

Â¶ 30 âThe interpretation of when a claim accrues under a statute of 

limitations is an issue of law.â Sulca, 77 P.3d at 899. A district 

court may grant summary judgment if a plaintiffâs claim is barred 
by the governing statute of limitations, but not when there are 
disputed issues of fact about when the statute of limitations began 
running. Curry v. Zag Built LLC, 2018 COA 66, Â¶ 23. 

Â¶ 31 The start of a statutory limitation period depends on when an 

action accrues. Harrison v. Pinnacol Assurance, 107 P.3d 969, 972 
(Colo. App. 2004). A cause of action accrues when the injury, loss, 

 
12 
damage, or conduct giving rise to the claim is discovered or should 
have been discovered through the exercise of reasonable diligence. 
Â§ 13-80-108(8), C.R.S. 2024. 
D. Analysis 

Â¶ 32 There are two alternative statutes of limitations applicable to 

Hatkoffâs claims. The first â section 13-80-102(1)(i), C.R.S. 2024 â 

establishes a two-year statute of limitations for declaratory 
judgment actions. The second â section 13-80-103.5(1)(a), C.R.S. 

2024 â establishes a six-year statute of limitations for actions 
seeking to enforce a promissory note. Hatkoffâs claims are time 

barred under both statutes since it is undisputed that he didnât 
take the actions necessary to collect the authorized, but 
not-yet-issued shares outlined in the Buy-Out Agreement until well 
after both statutes of limitations had passed. 
1. Hatkoffâs Claim is Barred by Section 13-80-102(1)(i) 

Â¶ 33 We apply a two-year statute of limitations under section 

13-80-102(1)(i) to actions seeking a declaratory judgment. 

Harrison, 107 P.3d at 972 (âWe discern no statute of limitations 

specifically applicable to declaratory judgment actions and therefore 
apply the two-year catch-all statute of limitations.â). 

 
13 
Â¶ 34 We conclude that Hatkoffâs claim was time barred. Hatkoff 

asserted in his 2009 letter to Accutrend that payment due under 
the Promissory Note was âchronically and seriously in default.â 

Thus, Hatkoff was aware of the injury to his interests at least as 
early as 2009, although he likely discovered the harm earlier due to 
his references to default dating back to 2006. Even assuming 
Hatkoff discovered the harm when the 2009 letter was written, 
Hatkoffâs claim accrued on December 1, 2009. From that date, 
Hatkoff had two years to raise his claim under section 13-80-102. 

But Hatkoff didnât raise a claim at this time. Instead, it is 
undisputed that he raised the claim more than ten years after the 
2009 letter. 
2. Hatkoffâs Claim is Barred by Section 13-80-103.5(1)(a) 

Â¶ 35 Though Hatkoffâs complaint sought declaratory judgment, the 

district court, in ruling on Accutrendâs motion for summary 
judgment, found that his claim could be construed as an action for 
a liquidated sum of money to collect on the Promissory Note. 
Â¶ 36 All actions seeking to enforce rights set forth in an instrument 

securing the payment of or evidencing any debt are subject to a 
six-year statute of limitations. Â§ 13-80-103.5(1)(a). A claim to 

 
14 
collect on a promissory note accrues the day after it matures. See 

Rossi v. Osage Highland Dev., LLC, 219 P.3d 319, 321 (Colo. App. 

2009). Here, it is undisputed that the Promissory Note matured on 
December 1, 2008, the date that the outstanding principal balance 
was due under the Agreement. Any claim seeking to enforce the 
Promissory Note therefore accrued on December 2, 2008, and 
became time barred on December 2, 2014. Hatkoff didnât file suit 
against Accutrend until 2022, nearly eight years after any claim to 
enforce the Promissory Note had expired. 
Â¶ 37 Because Hatkoff didnât bring the action within either the two-

year or six-year period, summary judgment was proper. 
IV. Equitable Tolling 

Â¶ 38 Alternatively, Hatkoff asserts that the district court erred by 

denying his request for equitable tolling of the statute of limitations. 
We are not persuaded. 
A. Applicable Law 

Â¶ 39 Equitable tolling applies when flexibility is required to 

âaccomplish the goals of justice.â Dean Witter Reynolds, Inc. v. 

Hartman, 911 P.2d 1094, 1096 (Colo. 1996). Courts may toll the 

statute of limitations in situations where, despite diligent efforts, a 

 
15 
plaintiff is unable to bring a case due to the defendantâs wrongful 
impediment or other âtruly extraordinary circumstances.â Id. at 

1099. However, equitable tolling is generally disfavored and there 

must be an âextraordinary situationâ for it to apply. Brown v. 

Walker Com., Inc., 2022 CO 57, Â¶ 35. 

B. Analysis 

Â¶ 40 Hatkoff argues that Accutrend acted in bad faith by not 

responding to his letters. However, Accutrendâs failure to respond 

didnât impede his ability to seek redress as outlined in the Buy-Out 

Agreement or by filing a timely claim. Accutrend wasnât obligated to 
respond to Hatkoffâs letters because they werenât requests for his 
non-issued stock shares to issue, and the Stock Pledge Agreement 
only required that Accutrend deliver a new stock certificate for the 
shares upon a written request. Accutrendâs unresponsiveness does 
not amount to wrongful conduct or extraordinary circumstances 
sufficient for us to equitably toll either statute of limitations. 
Â¶ 41 Hatkoff further asserts that equitable tolling should apply here 

because Accutrendâs failure to alert him that he didnât possess 
actual stock in the company is an omission that contributed to the 
running of the statute of limitations. See Strader v. Beneficial Fin. 

 
16 
Co., 551 P.2d 720, 724 (1976) (âequitable estoppelâ will prevent 

party from asserting a statute of limitations defense where the 
partyâs own acts or omissions contributed to statuteâs running). 

But Accutrend didnât omit any information that prevented Hatkoff 
from filing his claim before either statute of limitations passed. 
Indeed, Hatkoff seems to have recognized that he would need to 
take steps to âassert [his] rights,â which he claimed included the 

ability to require the âtotal disclosure of [Accutrendâs] financial 
recordsâ and obtaining âstock in half the company that [Accutrend] 
placed as secured collateral.â Hatkoffâs 2009 letter was therefore 

written with an understanding of the Buy-Out Agreement and the 
process he needed to comply with to assert his interest in the 
unissued stock shares. 
Â¶ 42 We therefore conclude that Hatkoffâs 2009 letter wasnât 

sufficient to assert his rights under the Agreement, and as reasoned 
above, at the time of Hatkoffâs 2019 letter both statute of limitations 

periods had lapsed. 
V. Appellate Costs and Fees 

Â¶ 43 Lastly, we consider the partiesâ respective requests for 

appellate costs and attorney fees. Hatkoff requests appellate costs 

 
17 
and fees under section 2.2 of the Stock Pledge Agreement, and 
Accutrend requests appellate attorney fees under C.A.R. 28(b), 

asserting that Hatkoffâs appeal was frivolous. 
Â¶ 44 Because we are affirming the district courtâs order, we deny 

Hatkoffâs request for appellate costs and fees. Although Hatkoff 

didnât prevail on his appellate arguments, he supported his 

arguments with pertinent law and facts. Accordingly, Accutrend 
isnât entitled to its attorney fees. See Averyt v. Wal-Mart Stores, Inc., 

2013 COA 10, Â¶ 42 (Even where a lawyer presents a supportable 
argument that is âextremely unlikely to prevail on appeal,â the 
appeal is not ânecessarily frivolous.â) (citation omitted). 

VI. Conclusion 

Â¶ 45 The district courtâs order granting summary judgment in favor 

of Accutrend is affirmed. 
JUDGE WELLING and JUDGE BERNARD concur.