24CA0545 Hatkoff v Accutrend 11-21-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0545
Arapahoe County District Court No. 22CV30705
Honorable Thomas W. Henderson, Judge

Reed A. Hatkoff,

Plaintiff-Appellant,

v.

Accutrend Data Corporation,

Defendant-Appellee.

ORDER AFFIRMED

Division VI
Opinion by JUSTICE MARTINEZ*
Welling and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

Lewis Roca Rothgerber Christie LLP, Darren J. Lemieux, Elizabeth Michaels, Denver, Colorado, for Plaintiff-Appellant

Wysocki Law Group P.C., Jeremy S. Wysocki, Zachary Crow, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Plaintiff Reed A. Hatkoff appeals a district court order granting summary judgment in favor of defendant Accutrend Data Corporation.  We affirm.

## I.    Background

¶ 2    Hatkoff and Vicki Reavis formed Accutrend in 1999.  Each received 5,000 of the 10,000 total shares of common stock in Accutrend.

¶ 3    On November 7, 2001, Hatkoff and Accutrend entered into a Buy-Out Agreement.  The Buy-Out Agreement consisted of a Stock Redemption Agreement, a Stock Pledge Agreement, and a Promissory Note.1

¶ 4    The Stock Redemption Agreement provided that Hatkoff would "sell, assign, convey and transfer" to Accutrend the 5,000 shares of "the no par value common stock" of Accutrend that Hatkoff owned in exchange for the purchase price of $717,070.14.  The purchase price was payable by Accutrend's delivery of a Promissory Note, secured by the Stock Pledge Agreement.  The Stock Redemption Agreement further provided that the closing would occur on

---

1 The Buy-Out Agreement also incorporated a consulting agreement that is not relevant to the questions before us.

November 7, 2001, at which time Hatkoff was required to, as relevant here, "[s]ell, assign, convey, transfer and deliver to [Accutrend]" his 5,000 shares.

¶ 5    The Stock Pledge Agreement required Accutrend to complete it as a condition precedent to closing the Stock Redemption Agreement.  The Stock Pledge Agreement provided that "[Accutrend], as an accommodation, has agreed to pledge to [Hatkoff] five thousand (5,000) shares of [Accutrend's] no par value common stock as collateral" for the Promissory Note.  The parties thus agreed to a "grant of security interest."  The Stock Pledge Agreement additionally provided Hatkoff with remedies in the event of a default on the Promissory Note by Accutrend.

¶ 6    Accutrend executed the Promissory Note dated November 7, 2001, in the original principal amount of $717,070.14, payable to Hatkoff.  Pursuant to the terms and conditions of the note, Accutrend agreed to make monthly payments of $10,648.09, beginning on January 1, 2022, and to continue until the Promissory Note was fully paid, "provided, however, if not sooner paid, the entire principal amount outstanding and accrued interest thereon, shall be due payable on December 1, 2008."  According to

2

the Promissory Note, a default would occur if Accutrend failed to make a monthly payment within ten calendar days following the due date for the payment.

¶ 7 In connection with the Buy-Out Agreement, Accutrend delivered to Hatkoff a stock certificate (Stock Certificate No. 3). Stock Certificate No. 3 stated that the shares in Accutrend represented by the certificate "are subject to further restriction" as set forth in the Stock Pledge Agreement dated November 7, 2001.

¶ 8 Accutrend defaulted on the note as of 2009 at the latest.

¶ 9 On December 1, 2009, Hatkoff sent Reavis a letter asserting Accutrend had been in default under the Buy-Out Agreement since 2007 because Accutrend had defaulted on the Promissory Note, and that Hatkoff would take further action if the default was not resolved by the end of 2009. Neither Accutrend nor Reavis responded to Hatkoff's December 1, 2009, letter.

¶ 10 On November 14, 2019, Hatkoff sent Reavis another letter. In that letter, Hatkoff asserted that Accutrend's debt was "way past the statutory limit to bring an action to collect," but that "the stock certificate and ownership" were still valid. Hatkoff thus claimed he owned half of the company, and he "would settle for the [December]

3

2009 balance without any accruing interest." Again, neither Accutrend nor Reavis responded to Hatkoff's November 14, 2019, letter.

¶ 11     Hatkoff filed suit against Accutrend on April 20, 2022. Hatkoff sought a declaratory judgment "that [Accutrend] Certificate No. 3 is a valid stock certificate and that [Hatkoff] is the rightful owner of five thousand shares of common stock in [Accutrend] with the right to vote, execute proxies or receive distributions with respect to the Collateral Shares." Hatkoff also sought a books and records inspection under sections 7-116-102 and -103, C.R.S. 2024.

¶ 12     Accutrend moved for summary judgment, asserting that Hatkoff's declaratory judgment claim had been barred since at least 2011 under a two-year statute of limitations and his right to enforce the Promissory Note had been barred since at least 2014 under a six-year statute of limitations.

¶ 13     The district court granted Accutrend's motion. First, the court concluded that the Buy-Out Agreement unambiguously stated that Accutrend was to provide 5,000 shares to Hatkoff as security for the payment of the Promissory Note. Therefore, the court concluded Stock Certificate No. 3 represented secured collateral in Accutrend,

not a certificate of issued shares in Accutrend. The district court further concluded that Hatkoff's claim was barred by the statute of limitations and Hatkoff was not entitled to equitable tolling. The district court later denied Hatkoff's motion for reconsideration on the same grounds. Hatkoff now appeals the district court's order granting summary judgment in favor of Accutrend.

## II. Hatkoff's Security Interest in Accutrend

¶ 14 Hatkoff asserts that the district court erred by concluding that Stock Certificate No. 3 represented unissued shares of Accutrend, or alternatively, that the district court failed to resolve ambiguities in the Buy-Out Agreement. We disagree.

### A. Additional Relevant Facts

¶ 15 The Buy-Out Agreement encompassed three documents: the Stock Redemption Agreement, the Stock Pledge Agreement, and the Promissory Note. These documents were executed by Hatkoff and Accutrend on November 7, 2001.

¶ 16 Under the Stock Redemption Agreement, Accutrend agreed to pay Hatkoff $717,070.14 plus interest for his 5,000 shares of the company with payments due on the first of each month until the total plus interest was paid off, or when the Promissory Note

expired on December 1, 2008, at which time any outstanding balance was due.

¶ 17 Under the Stock Pledge Agreement, consideration of Accutrend's promise to pay the Promissory Note was supported by Accutrend's issuance to Hatkoff of 5,000 shares of "authorized but unissued no par value stock" as "secured collateral." The Stock Pledge Agreement provided that if Accutrend defaulted on payment of the Promissory Note, Hatkoff could notify Accutrend to receive a new stock certificate for the 5,000 shares of no par value common stock. That agreement further required all "notices, demands, and requests of any kind" to be in writing, in accordance with the Stock Redemption Agreement.

### B. Standard of Review

¶ 18 We review a district court's ruling on a motion for summary judgment de novo. *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*; *see* C.R.C.P. 56(c). We further review a district court's interpretation of a contract and whether that contract is ambiguous de novo. *Rocky Mountain Health Maint. Org.,*

*Inc. v. Colo. Dep't of Health Care Pol'y & Fin.*, 54 P.3d 913, 919 (Colo. App. 2001).

### C. Applicable Law

¶ 19    "The primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties." *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009). To determine the parties' intent, the court should examine the contract in its entirety and "give effect to the plain and generally accepted meaning of the contractual language." *Id.*

¶ 20    Unless ambiguous, we enforce a contract according to its plain language. *Id.* A contract term is ambiguous if it is reasonably susceptible to more than one meaning, but the potential for more than one interpretation does not, in itself, create ambiguity. *Rocky Mountain Health*, 54 P.3d at 919. Mere disagreement of the parties does not necessarily indicate ambiguity, either. *E. Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005).

### D. Analysis

¶ 21    We conclude that the Buy-Out Agreement unambiguously gave Hatkoff a security interest in 5,000 unissued shares of Accutrend.

7

¶ 22    Hatkoff originally possessed 5,000 shares of Accutrend before the Buy-Out Agreement was effectuated.  A corporation may issue shares authorized by its articles of incorporation, and these issued shares are outstanding shares until they are redeemed.  *See* § 7-106-103(1), C.R.S. 2024.  Here, pursuant to the plain language of the Stock Redemption Agreement, Accutrend redeemed Hatkoff's 5,000 shares of no par value common stock of Accutrend in exchange for the delivery of the Promissory Note.  This redemption closed on November 7, 2001, when Accutrend executed the Promissory Note.

¶ 23    Meanwhile, the Stock Pledge Agreement granted Hatkoff a security interest in 5,000 shares of no par value common stock as collateral for the Promissory Note.  And Stock Certificate No. 3 specifically provided that the shares were "subject to further restriction" as set forth in the Stock Pledge Agreement.

¶ 24    Viewed in isolation, some of the language in Stock Certificate No. 3 could be read to grant Hatkoff a stock pledge in Accutrend, which would create an ambiguity.  But we construe a contract as a whole with the goal of harmonizing its provisions so that none will be rendered meaningless.  *See Copper Mountain*, 208 P.3d at 697.

Thus, even if one contractual provision read in isolation appears to create an ambiguity, we can resolve that ambiguity by referencing other provisions. *See Travelers Ins. Co. v. Jefferies-Eaves, Inc.*, 442 P.2d 822, 824 (Colo. 1968) (when the wording of a clause is susceptible to multiple interpretations, it is the duty of a court to examine the contract as a whole to determine if other provisions will resolve the ambiguity).

¶ 25 Here, the terms of the Buy-Out Agreement can be harmonized by reading the Stock Pledge Agreement with Stock Certificate No. 3. Section 1.1 of the Stock Pledge Agreement specifies, as follows:

> As security for the obligations specific in Section 2 hereof, [Accutrend] hereby grants to [Hatkoff] . . . a security interest in and to five thousand (5,000) shares of [Accutrend's] authorized but unissued no par value common stock (the "Collateral Shares").

¶ 26 As acknowledged by Hatkoff, section 1.2 provided for delivery of the "Collateral Shares" — as specifically defined in section 1.1 as authorized but unissued — by a stock certificate. Therefore, as we read the plain terms of the Buy-Out Agreement, Hatkoff was the owner of 5,000 authorized but unissued shares in Accutrend as

9

secured collateral for Accutrend's debt.[2] In turn, Stock Certificate No. 3 was a representation of these 5,000 authorized but unissued shares in Accutrend. Accordingly, the district court correctly determined the unambiguous meaning of the parties' agreement.

## III. Statute of Limitations

¶ 27 Hatkoff asserts that the district court erred by measuring the accrual date from Accutrend's default on the Promissory Note. Instead, he asserts that his claim accrued in March 2022 when Accutrend denied his shareholder status. We disagree.

### A. Additional Relevant Facts

¶ 28 In February 2022, Hatkoff sent a books and records inspection demand to Accutrend. Accutrend responded to that demand on March 4, 2022. In its response, Accutrend indicated that Hatkoff "sold any ownership interest he held in [Accutrend] years ago" and that Hatkoff was "no longer a shareholder of Accutrend."

---

[2] Indeed, Hatkoff's 2009 letter recognized he had sold his interest in Accutrend and that the stock he possessed was secured collateral. However, in his 2019 letter, Hatkoff claimed he "was always aware that [his] original ownership interest was intact and never conveyed or released," and that he knew he "was still an owner of half of the [Accutrend] stock."

10

## B. Standard of Review

¶ 29 Whether the statute of limitations bars a particular claim is "usually a fact question." *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 899 (Colo. App. 2003). However, where the facts relevant to a claim's accrual are undisputed, we review a district court's application of the statute of limitations de novo. *Pilmenstein v. Devereux Cleo Wallace*, 2021 COA 59, ¶ 48; *Kovac v. Farmers Ins. Exch.*, 2017 COA 7M, ¶ 13. We also review de novo a court's determination as to which statute of limitations controls a cause of action. *Gunderson v. Weidner Holdings, LLC*, 2019 COA 186, ¶ 9.

## C. Applicable Law

¶ 30 "The interpretation of when a claim accrues under a statute of limitations is an issue of law." *Sulca*, 77 P.3d at 899. A district court may grant summary judgment if a plaintiff's claim is barred by the governing statute of limitations, but not when there are disputed issues of fact about when the statute of limitations began running. *Curry v. Zag Built LLC*, 2018 COA 66, ¶ 23.

¶ 31 The start of a statutory limitation period depends on when an action accrues. *Harrison v. Pinnacol Assurance*, 107 P.3d 969, 972 (Colo. App. 2004). A cause of action accrues when the injury, loss,

11

damage, or conduct giving rise to the claim is discovered or should have been discovered through the exercise of reasonable diligence. § 13-80-108(8), C.R.S. 2024.

## D. Analysis

¶ 32　There are two alternative statutes of limitations applicable to Hatkoff's claims. The first — section 13-80-102(1)(i), C.R.S. 2024 — establishes a two-year statute of limitations for declaratory judgment actions. The second — section 13-80-103.5(1)(a), C.R.S. 2024 — establishes a six-year statute of limitations for actions seeking to enforce a promissory note. Hatkoff's claims are time barred under both statutes since it is undisputed that he didn't take the actions necessary to collect the authorized, but not-yet-issued shares outlined in the Buy-Out Agreement until well after both statutes of limitations had passed.

### 1. Hatkoff's Claim is Barred by Section 13-80-102(1)(i)

¶ 33　We apply a two-year statute of limitations under section 13-80-102(1)(i) to actions seeking a declaratory judgment. *Harrison,* 107 P.3d at 972 ("We discern no statute of limitations specifically applicable to declaratory judgment actions and therefore apply the two-year catch-all statute of limitations.").

¶ 34    We conclude that Hatkoff's claim was time barred. Hatkoff asserted in his 2009 letter to Accutrend that payment due under the Promissory Note was "chronically and seriously in default." Thus, Hatkoff was aware of the injury to his interests at least as early as 2009, although he likely discovered the harm earlier due to his references to default dating back to 2006. Even assuming Hatkoff discovered the harm when the 2009 letter was written, Hatkoff's claim accrued on December 1, 2009. From that date, Hatkoff had two years to raise his claim under section 13-80-102. But Hatkoff didn't raise a claim at this time. Instead, it is undisputed that he raised the claim more than ten years after the 2009 letter.

   2.    Hatkoff's Claim is Barred by Section 13-80-103.5(1)(a)

¶ 35    Though Hatkoff's complaint sought declaratory judgment, the district court, in ruling on Accutrend's motion for summary judgment, found that his claim could be construed as an action for a liquidated sum of money to collect on the Promissory Note.

¶ 36    All actions seeking to enforce rights set forth in an instrument securing the payment of or evidencing any debt are subject to a six-year statute of limitations. § 13-80-103.5(1)(a). A claim to

collect on a promissory note accrues the day after it matures. *See Rossi v. Osage Highland Dev., LLC*, 219 P.3d 319, 321 (Colo. App. 2009). Here, it is undisputed that the Promissory Note matured on December 1, 2008, the date that the outstanding principal balance was due under the Agreement. Any claim seeking to enforce the Promissory Note therefore accrued on December 2, 2008, and became time barred on December 2, 2014. Hatkoff didn't file suit against Accutrend until 2022, nearly eight years after any claim to enforce the Promissory Note had expired.

¶ 37    Because Hatkoff didn't bring the action within either the two-year or six-year period, summary judgment was proper.

## IV.    Equitable Tolling

¶ 38    Alternatively, Hatkoff asserts that the district court erred by denying his request for equitable tolling of the statute of limitations. We are not persuaded.

### A.    Applicable Law

¶ 39    Equitable tolling applies when flexibility is required to "accomplish the goals of justice." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996). Courts may toll the statute of limitations in situations where, despite diligent efforts, a

14

plaintiff is unable to bring a case due to the defendant's wrongful impediment or other "truly extraordinary circumstances." *Id.* at 1099. However, equitable tolling is generally disfavored and there must be an "extraordinary situation" for it to apply. *Brown v. Walker Com., Inc.*, 2022 CO 57, ¶ 35.

## B.  Analysis

¶ 40    Hatkoff argues that Accutrend acted in bad faith by not responding to his letters. However, Accutrend's failure to respond didn't impede his ability to seek redress as outlined in the Buy-Out Agreement or by filing a timely claim. Accutrend wasn't obligated to respond to Hatkoff's letters because they weren't requests for his non-issued stock shares to issue, and the Stock Pledge Agreement only required that Accutrend deliver a new stock certificate for the shares upon a written request. Accutrend's unresponsiveness does not amount to wrongful conduct or extraordinary circumstances sufficient for us to equitably toll either statute of limitations.

¶ 41    Hatkoff further asserts that equitable tolling should apply here because Accutrend's failure to alert him that he didn't possess actual stock in the company is an omission that contributed to the running of the statute of limitations. *See Strader v. Beneficial Fin.*

*Co.*, 551 P.2d 720, 724 (1976) ("equitable estoppel" will prevent party from asserting a statute of limitations defense where the party's own acts or omissions contributed to statute's running). But Accutrend didn't omit any information that prevented Hatkoff from filing his claim before either statute of limitations passed. Indeed, Hatkoff seems to have recognized that he would need to take steps to "assert [his] rights," which he claimed included the ability to require the "total disclosure of [Accutrend's] financial records" and obtaining "stock in half the company that [Accutrend] placed as secured collateral." Hatkoff's 2009 letter was therefore written with an understanding of the Buy-Out Agreement and the process he needed to comply with to assert his interest in the unissued stock shares.

¶ 42     We therefore conclude that Hatkoff's 2009 letter wasn't sufficient to assert his rights under the Agreement, and as reasoned above, at the time of Hatkoff's 2019 letter both statute of limitations periods had lapsed.

## V.     Appellate Costs and Fees

¶ 43     Lastly, we consider the parties' respective requests for appellate costs and attorney fees. Hatkoff requests appellate costs

16

and fees under section 2.2 of the Stock Pledge Agreement, and Accutrend requests appellate attorney fees under C.A.R. 28(b), asserting that Hatkoff's appeal was frivolous.

¶ 44 Because we are affirming the district court's order, we deny Hatkoff's request for appellate costs and fees. Although Hatkoff didn't prevail on his appellate arguments, he supported his arguments with pertinent law and facts. Accordingly, Accutrend isn't entitled to its attorney fees. *See Averyt v. Wal-Mart Stores, Inc.*, 2013 COA 10, ¶ 42 (Even where a lawyer presents a supportable argument that is "extremely unlikely to prevail on appeal," the appeal is not "necessarily frivolous.") (citation omitted).

## VI. Conclusion

¶ 45 The district court's order granting summary judgment in favor of Accutrend is affirmed.

JUDGE WELLING and JUDGE BERNARD concur.

17