In re the MARRIAGE OF Arthur W. SEELY, Appellee and Cross-Appellant,

and

Carrie Glenn Seely, Appellant and Cross-Appellee.

No. 82CA0579.

Colorado Court of Appeals, Div. I.

May 17, 1984.

Rehearing Denied June 14, 1984.

Certiorari Denied Nov. 5, 1984.

Karsh & Fulton, P.C., Alan E. Karsh, Denver, for appellee and cross-appellant.

Richard O. Pittam, Denver, for appellant and cross-appellee.

PIERCE, Judge.

Both the husband and wife appeal from permanent orders entered in a dissolution of marriage proceeding. The permanent orders were entered after the trial court had granted the wife's C.R.C.P. 60(b) motion to set aside the property division provisions of a separation agreement that had previously been incorporated into the dissolution of marriage decree. We affirm the orders of the trial court.

The parties met in California in early 1975 and shortly thereafter began living together. In December 1975, they moved to Denver, where the husband was employed as a paramedic and the wife as an emergency medical technician. When they arrived in Denver, both of the parties were in their early twenties and neither had assets of substantial value.

In early 1976 the husband began investing in real estate in the Denver area. Initially, he acquired several single family residences that were badly in need of repair. Although both of the parties worked on the properties, title to the properties was held solely in the husband's name.

The small down payment on the first property came from the husband's savings account. Thereafter, over a period of time, the husband's mother contributed a total of $10,000 to the husband's real estate ventures and, in exchange, received a fifty percent partnership interest in all the real estate the husband acquired. Additionally, funds were obtained from bank borrowings against equity and from the sale of properties earlier acquired.

On May 26, 1978, the parties were married. By this time, the husband had acquired a number of apartment buildings, various other rental properties, and a single family residence in which the parties lived. In September 1978, the husband was injured in an automobile collision and was unable to continue working as a paramedic. Thereafter, he worked full time on his real estate ventures.

In December 1978, the husband transferred title to all of the properties he had acquired, including the parties' residence, to Real Equity Investments, Inc., (R.E.I.) a corporation that he formed with his half brother. The husband and his half brother each received fifty percent of the stock of R.E.I.; however, the husband's shares were subject to the fifty percent partnership interest of his mother. A stock offering circular prepared shortly after R.E.I. was formed contained an unaudited balance sheet that posited a stockholder's equity of $1,507,055. The circular noted that 100 shares of stock had been issued and that 50 additional shares were being offered at $15,000 per share.

On April 6, 1979, the husband filed a petition for the dissolution of the parties' marriage. Several days later, the wife accompanied the husband to his attorney's office, where she signed a waiver of service and a separation agreement. This agreement provided, among other things, that the husband would retain as his separate property the R.E.I. stock and would pay the wife maintenance of $1,000 per month for a period of ten months. The parties contemplated that the maintenance payments would permit the wife to complete

nursing school. The separation agreement further provided that each party would retain the household furniture and personal effects in their respective possessions; that the husband would retain all funds in his separate bank accounts ($11,000) and an encumbered 1976 Porsche; and that the wife would receive a small sum in the parties' joint bank account. The only other asset of the parties was a coin collection which the husband had acquired before the parties met.

On July 10, 1979, a hearing on permanent orders was held before a referee. The wife did not appear at the hearing and was unrepresented by counsel. No financial affidavits were filed by the husband as required by a local rule of the court, and no testimony or other evidence was introduced concerning the financial condition of the parties or the circumstances surrounding the execution of the separation agreement. After brief *pro forma* testimony by the husband, the referee recommended that a dissolution of marriage decree be granted, and that the separation agreement, found to be not unconscionable, be incorporated into the decree. Although the decree was dated July 10, 1979, and was apparently signed and entered by a district court judge (not Judge Rothenberg) on that date, it was not entered in the registry of actions until August 22, 1979.

After the dissolution of marriage decree was entered, the wife continued to live in the marital residence, and the husband claimed that he was entitled to receive $650 per month from the wife as rental for the property. The husband offset this amount against the $1000 per month maintenance payments provided for in the separation agreement and ultimately only paid the wife $4,299 in maintenance.

On January 25, 1980, the wife consulted an attorney regarding her right to collect the balance of the $10,000 in maintenance payments provided for in the separation agreement. At this time the wife was in nursing school and had no other source of income. On March 12, 1980, after her attorney had investigated the matter and upon his recommendation, the wife filed a motion for relief from judgment pursuant to C.R.C.P. 60(b) to set aside the provisions of the separation agreement.

In granting the wife's motion, the trial court found that, at the time the separation agreement was executed, the wife was in an extremely agitated emotional state, had no understanding of her legal rights or of the value of the parties' assets, and erroneously believed that the husband's attorney was representing both of the parties. The trial court further found that the husband had deliberately misled the wife both as to her legal rights and the value of the R.E.I. stock, and had perpetrated a fraud upon the court by not filing a financial affidavit or otherwise disclosing the nature and extent of his assets at the hearing on permanent orders.

In entering new permanent orders, the trial court rejected the wife's claim that the parties had entered into a common law marriage when they moved to Denver; however, the court did find that, both before and after the parties were married, the wife had made substantial contributions to the husband's acquisition of the real estate that was then exchanged for the R.E.I. stock. The trial court further determined that the net equity value of the husband's real estate on the date of the parties' marriage, excluding the fifty percent partnership interest of his mother, was $80,700; that the value of other non-marital assets of the husband on that date was $15,000; and that the value of the husband's R.E.I. stock on the date the decree was executed, again excluding the fifty percent interest of his mother, was $375,000. Thus, the court determined that the value of the husband's non-marital assets had increased in value during the parties' marriage by $279,200 and that this increase in value was marital property subject to division between the parties pursuant to § 14–10–113(4), C.R.S.

Concluding that the husband had committed a fraud upon the court, the trial court set aside the separation agreement based on C.R.C.P. 60(b)(3) and (5). Then,

after noting that no children had been born of the marriage and that the wife had no significant assets, the court awarded the husband the R.E.I. stock valued at $375,-000 and the wife the sum of $135,301, payable by the husband within 90 days of the court's order. The court also directed the husband to pay the wife's attorney $27,000 in legal fees.

Because we conclude that the trial court's reliance on C.R.C.P. 60(b)(5) was justified, we make no determination as to the propriety of the trial court's reliance on C.R.C.P. 60(b)(3) or its determination that the husband had committed a fraud upon the court.

## I.

### A. Time Limits of C.R.C.P. 60(b)

The husband contends here that the wife's motion for relief from judgment was barred by the six-month time limitation applicable to C.R.C.P. 60(b)(1) and (2), and that the trial court improperly circumvented this six-month time limitation by relying on other provisions of the rule. We disagree.

■ Once property division provisions of a separation agreement have been incorporated into a dissolution of marriage decree, they may not be set aside or modified unless the conditions of C.R.C.P. 60 are met. *In re Marriage of Stroud*, 631 P.2d 168 (Colo.1981). Further, if relief from judgment is sought on the grounds set forth in C.R.C.P. 60(b)(1), *i.e.*, "mistake, inadvertence, surprise or excusable neglect," or C.R.C.P. 60(b)(2), "fraud ... misrepresentation or other misconduct of an adverse party" a motion therefor must be filed within six months of the entry of judgment or it is barred. *Schaffer v. District Court*, 172 Colo. 43, 470 P.2d 18 (1970). Motions under other provisions of C.R.C.P. 60(b) must be filed within a "reasonable time."

■ Also, C.R.C.P. 60(b)(5) "is a residuary clause covering extreme situations *not covered by the preceding clauses in the Rule*" and reliance on that portion of the rule is precluded if the only grounds for relief established are covered by clause (1) of the rule. *Atlas Construction Co., Inc. v. District Court*, 197 Colo. 66, 589 P.2d 953 (1979). Further, a motion under C.R.C.P. 60(b) cannot be treated as an independent action to obtain equitable relief from a prior judgment. *Atlas Construction Co., supra*. Thus, where the only grounds for relief established are those covered by either C.R.C.P. 60(b)(1) or (2), the six-month time limitation applicable to these clauses may not be circumvented by reliance on other provisions of the rule.

However, this does not mean that relief is unavailable under other provisions of C.R.C.P. 60(b) simply because grounds have also been established under either or both of clauses (1) and (2) of the rule. In the present case, contrary to the husband's assertion, circumstances existed that did not fall solely within the ambit of either C.R.C.P. 60(b)(1) or (2) or both.

■ Where two parties have undertaken the obligations implicit in a marriage relationship, it becomes the duty of the courts upon the dissolution of that relationship to ensure that neither party is forced to suffer unduly as a consequence of the termination of the marriage. *In re Marriage of Franks*, 189 Colo. 499, 542 P.2d 845 (1975). In conjunction with that duty, courts have recognized that separation agreements between spouses are often conceived and executed in an emotionally charged atmosphere, and there is a public policy concern with safeguarding the interest of a spouse whose consent to an agreement may have been obtained under emotionally stressful circumstances, especially if that spouse is unrepresented by counsel. *In re Marriage of Manzo*, 659 P.2d 669 (Colo.1983).

■ Thus, before a court incorporates property division provisions of a separation agreement into a dissolution of marriage decree, it should first review the provisions for fraud, overreaching, concealment of assets, or sharp dealing not consistent with the obligations of marital partners to deal fairly with each other, and then look to the

economic circumstances of the parties which result from the agreement, including a determination as to whether under the totality of the circumstances the property disposition is fair, just, and reasonable. *In re Marriage of Manzo, supra.*

■ The situation presented here is precisely of the kind the rule regarding judicial review of separation agreements for unconscionability was designed to safeguard against. The record discloses that the wife was emotionally devastated by the break-up of the marriage and that she executed the separation agreement in ignorance of her legal rights and without the benefit of counsel. The separation agreement itself was wholly inconsistent with the obligation of marital partners to deal fairly with each other.

■ Further, considering the economic circumstances of the parties, we conclude the property division provisions of the separation agreement were unconscionable. And, contrary to the rule enunciated in *In re Marriage of Manzo, supra,* the separation agreement was incorporated into the dissolution of marriage decree without any scrutiny, in total disregard of the public policy concern with safeguarding the interests of each spouse, particularly a spouse not represented by counsel. *See In re Marriage of Wigner,* 40 Colo.App. 253, 572 P.2d 495 (1977). Indeed, because no financial affidavits had been filed as required by a local court rule and no evidence regarding the parties' economic circumstances had been introduced, no significant judicial review of the separation agreement could be made. This omission was particularly objectionable because the wife had not entered an appearance and was not represented by counsel.

■ Court errors and omissions have generally been held to justify relief from judgment under Fed.R.Civ.P. 60(b)(6) which is identical to C.R.C.P. 60(b)(5). *See* Annot., 15 A.L.R.Fed. 193 at § 12. *See also Linker v. Linker,* 28 Colo.App. 136, 470 P.2d 882 (1970); *State ex rel. Gyurcsik v. Angelotta,* 50 Ohio St.2d 345, 364 N.E.2d 284 (1977). The total lack of any significant judicial review of this settlement agreement constituted a circumstance that did not fall within the ambit of either C.R. C.P. 60(b)(1) or (2). Therefore, this omission, in light of the circumstances presented, justified the trial court's reliance on C.R.C.P. 60(b)(5) in setting aside the provisions of the separation agreement between the parties.

■ We also reject the husband's contention that the wife's motion was not filed within a "reasonable time." The wife's motion was filed approximately eight months after the decree was executed and less than seven months after the decree was entered. Considering the wife's emotional state and her ignorance as to her legal rights and the value of the parties' assets, we cannot say as a matter of law that her C.R.C.P. 60(b) motion was not filed within a reasonable time.

■ Appellate review of the grant or denial of a C.R.C.P. 60(b) motion is ordinarily limited to determining whether the district court abused its discretion. *Johnson v. Johnson,* 132 Colo. 236, 287 P.2d 49 (1955). Here, the trial court did not abuse its discretion.

## B. Increase in Value of Marital Property

■ The husband also contends that the trial court erred in finding that the value of his non-marital property had increased by $279,200 during the marriage. However, its findings in this regard were properly based upon the testimony of wife's expert. Hence, they will not be disturbed upon appellate review. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

## C. Order of Property Settlement

The husband also asserts that the order of the trial court directing him to pay the wife $135,301 within 90 days of the court's order was confiscatory and an abuse of discretion.

■ In its findings, the trial court made specific reference to an R.E.I. stock

offering circular containing unaudited balance sheets of the corporation. These balance sheets posited a net worth or stockholder's equity for R.E.I. of $1,507,055 as of December 31, 1978, $2,603,836 as of December 31, 1979, and $3,131,192 as of May 31, 1980. As of May 31, 1980, the husband's 50 shares of R.E.I. stock, although subject to the 50% interest of his mother, had a stated book value in excess of $1,400,000. The husband offered no evidence that the value of his R.E.I. stock or his financial condition had deteriorated or diminished in any manner between May 31, 1980, and the date of the trial court's permanent orders. Thus, we reject the husband's assertion that the effect of the trial court's order, if upheld on appeal, would be to impoverish him. A trial court's orders in dividing marital property will not be disturbed upon appellate review absent a clear abuse of its discretion. *In re Marriage of Faulkner*, 652 P.2d 572 (Colo. 1982). Here, we find no such abuse.

## II.

In the trial court, the wife's attorney (not her attorney on appeal) claimed that he was entitled to fees in excess of $135,000, based upon an agreed upon rate of $125 per hour. In its permanent orders, the trial court found that the wife's attorney had expended at least 450 hours that were reasonable and necessary in his representation of the wife and that he was entitled to be compensated at the rate of $60 per hour. Thus, the trial court awarded the wife $27,000 in attorney's fees and ordered the husband to pay this amount directly to the wife's attorney.

The wife asserts here that the effect of the trial court's order was to modify her fee agreement with her attorney. Relying on *In re Marriage of Nichols*, 38 Colo.App. 82, 553 P.2d 77 (1976), the wife argues that under § 14–10–119, C.R.S. (1983 Cum.Supp.), a trial court is authorized to apportion attorney's fees between the parties but is without statutory authority to determine the amount of fees to which an attorney is entitled.

We agree with that statement of law but cannot see that the trial court did anything but comply with the statute and exercised her "power to order one party to pay to the other a reasonable amount for costs and attorney's fees incurred in maintaining the action." *In re Marriage of Nichols, supra.*

The trial court's duty was to determine, as between the parties, what was a reasonable fee that the husband should be responsible for, under all the circumstances of the case. It has no power to determine the contract between the wife and her attorney, nor did it attempt to exercise such a power in this case. The wife's former attorney was not a party to this action, and is not a party to this appeal. The statute does not require that the husband pay any amount which the wife's attorney should choose to bill her for, no matter how inflated, ridiculous, or unconscionable that fee might be. Hence, the trial court did not abuse its discretion in this instance.

The wife also asserts that, in its division of property, the trial court abused its discretion by not taking into account the husband's use of the marital property from the date of the decree to the date permanent orders were entered. This assertion is wholly without merit. The trial court expressly noted that, in its division of property, it had considered the husband's continued use of the marital property. We find no abuse of the trial court's discretion, and hence, its determinations will not be disturbed on review. *In re Marriage of Faulkner, supra.*

Judgment affirmed.

STERNBERG and BABCOCK, JJ., concur.