In re the MARRIAGE OF Vickie A. THOMASON, Appellee,

and

Robert E. Thomason, Appellant.

No. 89CA1205.

Colorado Court of Appeals, Div. I.

Nov. 23, 1990.

William J. Walsh, Lakewood, for appellee.

Wedgle & Shpall, P.C., Richard J. Wedgle, Murray Wilkening, Denver, for appellant.

Opinion by Judge PIERCE.

Robert E. Thomason, husband, appeals the order of the trial court amending the language of a Qualified Domestic Relations Order (QDRO). We reverse.

A separation agreement reached by the parties was approved by the court and incorporated in a decree of dissolution on April 28, 1989. Later, the district court approved a QDRO submitted by husband. Vickie A. Thomason, wife, filed an objection to that order and argued that certain

additional language should have been included in the QDRO in order to prevent a significant tax liability to her. She asserted that the amendment was necessary to conform the QDRO to the intent of the parties that she felt was expressed in the separation agreement.

The trial court, without further comment, sustained wife's objection based on the language in paragraphs 15(a) and 16(a) of the separation agreement. As proposed by wife, it therefore added language to the QDRO that husband would reimburse or otherwise hold wife harmless from any income tax that she becomes liable for as a result of the transfer of the $87,500.

Husband contends that the result of this amendment was impermissibly to modify the agreement of the parties, contrary to the plain language of the separation agreement, and in the absence of the existence of conditions justifying the reopening of a judgment. We agree.

Paragraph 16(a) of the separation agreement, located in the section of the agreement dividing the marital property, provided that wife:

> "shall be entitled to the sum of $87,500 which will be conveyed from the [husband's] Occidental savings plan. Said monies will be transferred through a [Q]ualified Domestic Relations Order ... said monies will be transferred to [wife] within ninety days ... wife shall be entitled to said funds and all other property listed in this paragraph as and for her own property absent any claim from the husband."

Paragraph 15(a), located within the section labeled "income tax matters," provided that all transfers of property set forth in the agreement were transfers of marital property in exchange for marital rights and considerations and that, therefore, the transfers were not a taxable event and resulted in no capital gains.

■ Interpretation of a written contract is a question of law for the court. *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984).

■ The intent of the parties to a contract is to be determined from the contract language itself, and extrinsic evidence of intent is relevant only if, after examination of the entire agreement, the terms are ambiguous. *In re Marriage of Anderson*, 711 P.2d 699 (Colo.App.1985). The sole fact that the parties disagree as to the meaning of the terms of a contract does not itself create an ambiguity. If a contract is unambiguous, it must be enforced in accordance with the expressed intention of the parties. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978).

■ To determine if an ambiguity exists, the language of the agreement must be construed by application of the accepted meaning of the words with reference to all its provisions. The nature of the transaction which forms the contract subject matter must also be considered. *In re Marriage of Norton*, 757 P.2d 1127 (Colo.App. 1988).

■ Applying these principles here, we conclude that paragraph 16(a) of the separation agreement, while it could have been more explicit, was not ambiguous. Therefore, the trial court erred in adding language to the QDRO as it was contrary to the expressed intent of the parties.

Any issue as to the parties' intent is minimized when we consider the purpose of a QDRO. A QDRO is a device created by the IRS by which a participant's retirement funds can be transferred from a participant to a spouse, former spouse, child, or other dependent as a non-taxable event provided that the sum received is rolled over into an eligible retirement plan within the time limitations set by the regulations. I.R.C. §§ 1041 and 414(p). Here, the separation agreement provides that wife's share of husband's savings plan is to be transferred to her through a QDRO and also provides, in conformity with the provisions of I.R.C. § 1041, that the transfer is not a taxable event.

While the agreement expressly provides for the anticipated tax consequences sur-

rounding the payment and receipt of maintenance, the tax deduction for the minor child, the parties' respective liability for the 1988 tax return, and the liability for marital debts, it is conspicuously lacking in any language that would obligate husband to pay the tax liability that would be incurred by wife should she request that her share of the savings plan be distributed to her prior to husband's earliest retirement date. Rather, by law, the transfer of wife's share of the savings plan through a QDRO is a non-taxable event. In addition, the separation agreement contains language stating that the parties both understand its terms, with each acknowledging that it contains the entire understanding of the agreement between them.

Wife concedes that the parties both knew and agreed that her $87,500 would be transferred from husband's savings plan through a QDRO, and that there was a meeting of the minds on this issue. Hence, the transfer of the $87,500 to wife pursuant to a QDRO was the non-taxable event that had been bargained for, and the trial court's amendment of the language of the QDRO constituted an impermissible and unjustified modification of the parties' separation agreement. *See In re Marriage of Hall,* 681 P.2d 543 (Colo.App.1984).

Accordingly, the order is reversed, and the cause is remanded to the trial court with instructions that it reinstate the QDRO in the form originally submitted by husband.

TURSI and PLANK, JJ., concur.