24CA1881 Feller v Kraxberger 02-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1881
Larimer County District Court No. 21CV30863
Honorable C. Michelle Brinegar, Judge

---

Steven R. Feller and Stephanie G. Feller,

Plaintiffs-Appellants,

v.

Kraxberger Enterprises, Ltd., a Colorado corporation,

Defendant-Appellee.

---

JUDGMENT AND ORDER VACATED,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE HARRIS
Dunn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

---

Herms & Cullers, LLC, Jeffrey Cullers, Fort Collins, Colorado, for Plaintiffs-Appellants

Fischer Law Group, P.C., Erik G. Fischer, Ashleigh Bravo, Fort Collins, Colorado, for Defendant-Appellee

¶ 1     Steven and Stephanie Feller appeal the trial court's C.R.C.P. 60(b) order setting aside the default judgment entered against Kraxberger Enterprises, Ltd., d/b/a Builder's Supply, Inc. (Kraxberger), and the subsequent judgment entered after a damages hearing. We vacate the order and judgment and remand the case for further proceedings.

## I.     Background

### A.     Factual Summary

¶ 2     After a hailstorm damaged their home, the Fellers decided to replace the home's windows and a couple of exterior doors. (For ease of reference, we refer to these items collectively as "the windows.") They hired Kraxberger (a glass product supplier but not an installer) to supply the windows and Rogers Construction, LLC (Rogers), to install them. Kraxberger and Rogers each sent an employee to the Fellers' home to take measurements and assist the Fellers with product selection. The cost of the initial replacement windows was $30,963.14.

¶ 3     When Kraxberger delivered the products, some of the windows were the wrong color, so Kraxberger agreed to replace them. Rogers

installed the remaining windows but stopped work on the project before Kraxberger delivered the remainder of the order.

¶ 4     The Fellers hired AllGuard Windows and Doors, LLC (AllGuard), to install the rest of the windows.  AllGuard completed the work, but the Fellers were dissatisfied with the installation and withheld the final payment.

¶ 5     The installed windows did not work properly.  It turned out that the initial measurements were inaccurate, so the windows were the wrong size.

¶ 6     The Fellers ordered new windows from a second window supplier and hired a third installer to remove and replace the windows installed by Rogers and AllGuard.[1]  But the second supplier and third installer ran into their own problems and could not complete the work.  At the time of the ensuing litigation, the Fellers had purchased replacement windows from a third window supplier and hired a fourth installer to complete the work.

---

[1] The windows supplied by Kraxberger and installed by Rogers and AllGuard were discarded after removal because the Fellers were unable to find an entity that could repurpose them.

## B. Procedural History

¶ 7    In November 2021, AllGuard sued the Fellers for failure to pay the final invoice.  The Fellers counterclaimed against AllGuard and Rogers, alleging that both companies had performed the installation work negligently.

¶ 8    As part of their investigation of the claims against AllGuard and Rogers, the Fellers served Kraxberger with a subpoena for documents in August 2022.  Kraxberger accepted service, and Steven Kraxberger, the company's principal, promptly emailed the responsive documents to the Fellers' lawyer.

¶ 9    Around this same time, and in response to the Fellers' counterclaims, Rogers designated Kraxberger a nonparty at fault.  *See* § 13-21-111.5(3), C.R.S. 2025.  The Fellers then amended their pleading to add Kraxberger as a counterclaim defendant,[2] alleging negligent measurement and product selection but not negligent installation.

---

[2] Contrary to the Fellers' repeated arguments on appeal, they denominated Kraxberger a "counterclaim defendant," not a third-party defendant, in their amended pleading.  *See* C.R.C.P. 13(h).  Regardless, Kraxberger's status in the litigation does not affect the analysis.

¶ 10   In the meantime, AllGuard and the Fellers settled their dispute, and AllGuard was dismissed from the case, leaving only the Fellers' counterclaims against Rogers and Kraxberger to be resolved.

¶ 11   In September 2022, one month after Steven Kraxberger had emailed documents to the Fellers' lawyer, the Fellers filed a return of service indicating that Kraxberger had been served with a summons and the amended counterclaims via personal service on Steven Kraxberger.  Kraxberger failed to respond within the twenty-one-day deadline.  *See* C.R.C.P. 12(a).  The Fellers moved for, and the clerk entered, default against Kraxberger.  *See* C.R.C.P. 55(a).

¶ 12   Several months later, the Fellers moved for entry of default judgment.  *See* C.R.C.P. 55(b).  They sought approximately $85,000 in economic damages, which included $44,651 for the second set of replacement windows (and staining); $35,700 for the third installer's labor; $930 in noneconomic damages for the inconvenience to Stephanie Feller; and nearly $20,000 in interest, for a total of $104,396.49.

¶ 13   By then, the Fellers had settled with Rogers for $20,000, most of which they agreed should be applied as a setoff to the default

judgment. The court adopted the Fellers' representations concerning damages, but, without providing an explanation, it did not set off the settlement amount. Accordingly, the court entered judgment against Kraxberger in the amount of $104,396.49 plus postjudgment interest and approximately $7,500 in costs.

¶ 14 Despite his earlier communication with Steven Kraxberger, the Fellers' lawyer delayed informing Kraxberger of the judgment in order to preclude a motion to set the judgment aside. *See* C.R.C.P. 60(b) (a motion to set aside a judgment due to excusable neglect or misconduct by the adverse party must be filed within 182 days, or approximately six months, of entry of the judgment). Seven months after entry of default judgment, the Fellers' lawyer contacted Steven Kraxberger, informed him of the judgment, and initiated collection efforts.

¶ 15 Kraxberger promptly filed a motion to set aside the default judgment, asserting that service had not been effectuated, the damages awarded were grossly excessive and beyond the scope of Kraxberger's alleged liability, and equitable factors supported setting aside the judgment.

¶ 16 At the evidentiary hearing on Kraxberger's motion, the trial court noted that the purpose of the hearing was to resolve the dispute concerning service but said that it would hear additional arguments on the motion to the extent the parties were prepared to present such arguments.

¶ 17 The evidence surrounding the issue of service was sharply conflicting. The process server testified that when he arrived at the Kraxberger office, a woman greeted him and retrieved Steven Kraxberger, whom he then served with the pleading. But Steven Kraxberger testified that he had "never been served with a summons and [counterclaim] in th[e] case," and he said that no woman had worked at the company for over ten years.

¶ 18 The trial court issued a brief oral ruling. It first found that Steven Kraxberger's testimony was "more persuasive" than the process server's, and, if a preponderance standard applied, it would set aside the judgment for lack of service. But it concluded that Steven Kraxberger's testimony did not "rise to" the clear and convincing standard of proof applicable to Rule 60(b) motions.

¶ 19 Nonetheless, although the court determined that relief was not warranted for ineffective service, it agreed to set aside the judgment.

[T]he Court also finds that in this particular situation, and in all cases, there's really a preference by the courts to resolve case[s] on the merits and not on a default basis. Especially in a situation like this where there has been — this is a long-standing litigation. This is a counterclaim. This is something that the, that the Fellers sat on for quite some time. And [the Fellers' counsel] is correct, that's the rule and he's exercising his judgment the way he wants to exercise it. However, the Court does not find it particularly appropriate in this case to continue with the judgment as it is now.

So I am going to not set aside the default. However, I am going to . . . set aside the judgment. So, now the judgment is at issue before the Court. . . . [T]here is a default. I can't set that aside. By clear and convincing evidence I just can't based on the evidence today. However, the judgment is not appropriate, given all the information I've heard. Given [Steven] Kraxberger's willingness and demonstrated ability to cooperate with the defense. So that's where we're at.

¶ 20    The court held a damages hearing over two days. At the conclusion of the hearing, the court awarded the Fellers $30,963.14 in damages — the amount they had paid Kraxberger for the original order of replacement windows — plus interest. The court explained that the Fellers had failed to prove that Kraxberger's negligence, which had been established by the default, caused the

approximately $100,000 in claimed damages. That conclusion was based in part on the court's finding that Stephanie Feller's testimony was unpersuasive and not credible. In the court's view, awarding the full amount of the requested damages would "not [be] just."

¶ 21    The Fellers appeal the trial court's order setting aside the default judgment against Kraxberger and the subsequent judgment. In the alternative, they appeal only the subsequent judgment — that is, the court's damages award.[3]

¶ 22    We agree that the trial court's factual findings and legal conclusions are insufficient to support its decision to set aside the default judgment. Accordingly, we vacate the court's order and the

---

[3] The Fellers purport to appeal the trial court's order awarding costs, but we lack jurisdiction to address that order. After the trial court entered the damages judgment, the Fellers filed a notice of appeal. While the appeal was pending, the trial court issued an order awarding costs. Because costs are separately appealable from the damages judgment, *see Oster v. Baack*, 2015 COA 39, ¶ 20, the Fellers' failure to file a separate notice of appeal or an amended notice means that the cost award is not part of this appeal, *see In re Estate of Anderson*, 727 P.2d 867, 870 (Colo. App. 1986) (notice of appeal was not effective to initiate an appeal of an order entered after the notice was filed).

subsequent judgment and remand for further proceedings without addressing the Fellers' alternative argument.

## II.     Analysis

### A.     Standard of Review and Preservation

¶ 23     As a general matter, we review a trial court's decision to set aside a judgment under C.R.C.P. 60(b) for an abuse of discretion. *Nickerson v. Network Sols., LLC*, 2014 CO 79, ¶ 10.  This deferential standard reinforces two related principles — first, that "the criteria for vacating a default judgment should be liberally construed" and, second, that the trial court is ordinarily in the best position to determine whether relief should be granted.  *McMichael v. Encompass PAHS Rehab. Hosp., LLC*, 2023 CO 2, ¶¶ 10, 12 (quoting *Sumler v. Dist. Ct.*, 889 P.2d 50, 56 (Colo. 1995)).  A court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, unfair, or is based on a misapprehension or misapplication of the law." *In re Estate of Chavez*, 2022 COA 89M, ¶ 19.

¶ 24     However, "when a trial court finds a judgment void under C.R.C.P. 60(b)(3), we review its decision de novo." *Nickerson*, ¶ 10. The Fellers argue that, because it is unclear whether the trial court relied on C.R.C.P. 60(b)(3) or another provision of the rule when

setting aside the default judgment, de novo review applies. We need not decide this issue, though, because, even applying the more deferential standard, we conclude that the court erred.

¶ 25 The Fellers argue that because "Kraxberger never raised C.R.C.P. 60(b)(5) as a reason to set aside the judgment, this Court cannot consider it." But Kraxberger's motion to set aside the default judgment discussed C.R.C.P. 60(b) generally, including considerations of substantial justice and equity relevant to subsection (5), and its reply brief confirmed that it was relying on C.R.C.P. 60(b)(5). Kraxberger's invocation of C.R.C.P. 60(b)(5) in the trial court, together with the trial court's ruling, sufficiently preserved the issue for appeal. *See Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 23 (concluding that because the trial court had ruled on the issue raised in the appellate court, the issue was preserved for appeal).

## B. Legal Principles

¶ 26 "Default judgments are disfavored. This is because default judgment is 'the harshest of all sanctions,' which is why it 'should be imposed only in extreme circumstances.'" *McMichael*, ¶ 11 (quoting *Beeghly v. Mack*, 20 P.3d 610, 613 (Colo. 2001)).

¶ 27    A trial court may grant relief from a judgment "upon such terms as are just."  C.R.C.P. 60(b); *see Davidson v. McClellan*, 16 P.3d 233, 237 (Colo. 2001).  "When deciding whether to set aside a default judgment, a court's underlying goal must be to 'promote substantial justice.'"  *McMichael*, ¶ 11 (quoting *Buckmiller v. Safeway Stores, Inc.*, 727 P.2d 1112, 1116 (Colo. 1986)).

¶ 28    A party seeking relief under C.R.C.P. 60(b)(1) or (b)(2) for mistake, excusable neglect, or fraud must file the motion "not more than 182 days after the judgment."  C.R.C.P. 60(b).  Failure to seek relief within this time limit bars the motion.  *In re Marriage of Seely*, 689 P.2d 1154, 1159 (Colo. App. 1984).

¶ 29    In contrast, a party seeking relief under C.R.C.P. 60(b)(3), (b)(4), or (b)(5) is not subject to a specific time bar.  C.R.C.P. 60(b)(3), which permits relief from a void judgment, may be invoked at any time.  *Burton v. Colo. Access*, 2018 CO 11, ¶ 35.  A party seeking relief under C.R.C.P. 60(b)(4) because it is no longer equitable for the judgment to have prospective effect or, under C.R.C.P. 60(b)(5), for "any other reason justifying relief from the operation of the judgment," must file the motion within a reasonable time.  C.R.C.P. 60(b); *see Seely*, 689 P.2d at 1160

(concluding that motion filed eight months after judgment entered was filed within a reasonable time).

¶ 30     C.R.C.P. 60(b)(5) "attempts to strike a balance between" the principles of finality and justice. *SR Condos., LLC v. K.C. Constr., Inc.*, 176 P.3d 866, 870 (Colo. App. 2007). But "to prevent this residuary provision from swallowing the enumerated reasons and subverting the principle of finality, it has been construed to apply only to situations not covered by the enumerated provisions and only in extreme situations or extraordinary circumstances." *Davidson*, 16 P.3d at 237; *see also Canton Oil Corp. v. Dist. Ct.*, 731 P.2d 687, 694 (Colo. 1987) (explaining that the residual provision should be "narrowly interpreted"). "However, this does not mean that relief is unavailable under other provisions of C.R.C.P. 60(b) simply because grounds have also been established under either or both of clauses (1) and (2) of the rule." *Seely*, 689 P.2d at 1159. Thus, a court may grant relief under C.R.C.P. 60(b)(5) when "circumstances exist[] that d[o] not fall *solely* within the ambit of" the rule's other provisions. *Id.* (emphasis added).

## C. Application

¶ 31　The trial court did not make clear which subsection of C.R.C.P. 60(b) it relied on to vacate the default judgment. However, because Kraxberger's motion was untimely for purposes of subsections (1) and (2), the trial court disclaimed an ability to provide relief under subsection (3) by finding that service was effective, and subsection (4) is inapplicable to the facts of the case, we presume that the trial court's ruling was based on subsection (5).

¶ 32　But to the extent the trial court intended to rely on the residual provision, it failed to make the necessary finding of "extraordinary circumstances" or an "extreme situation[]" warranting vacatur of the default judgment. *Davidson,* 16 P.3d at 237. Instead, the trial court alluded to various procedural and substantive issues present in the case, then concluded that preserving the judgment would not be "particularly appropriate." The court noted, for example, that the litigation was "long-standing"; Kraxberger was brought into the litigation late, as a counterclaim defendant; Steven Kraxberger had demonstrated a willingness to cooperate with the Fellers; and the Fellers had

13

delayed notifying Kraxberger of the default judgment. In addition, although it had adopted the Fellers' measure of damages in entering the default judgment, the court later determined that Kraxberger did not cause most of the Fellers' damages, and, therefore, the amount of the default judgment was erroneous and grossly excessive.

¶ 33    Colorado appellate courts have "never definitively delineated the scope of the extraordinary circumstances required for relief under the 'other reason' clause" in C.R.C.P. 60(b). *Canton Oil*, 731 P.2d at 694. The cases approving vacatur under C.R.C.P. 60(b)(5) present disparate factual scenarios.

¶ 34    In *Seely*, 689 P.2d at 1160, a division of this court held that the trial court had properly set aside a separation agreement under C.R.C.P. 60(b)(5) when the agreement was unfair, wife had not appeared in the dissolution proceedings, and no judicial officer had scrutinized the agreement before incorporating it into the decree. The division explained that "[c]ourt errors and omissions" could justify relief under C.R.C.P. 60(b)(5) and that the "total lack of any significant judicial review" of the parties' agreement amounted to such an omission. *Id.*; *see also Fed. Deposit Ins. Corp. v. United*

*Pac. Ins. Co.*, 152 F.3d 1266, 1275 (10th Cir. 1998) (collecting cases from federal appellate courts applying Fed. R. Civ. P. 60(b) and explaining that "a double recovery constitutes extraordinary circumstances which justify relief from judgment").

¶ 35     *Canton Oil* involved extraneous circumstances that affected the judgment. In that case, the supreme court agreed with the trial court that "grievous jury misconduct raising sensitive issues of religion" amounted to extraordinary circumstances justifying setting aside a verdict under C.R.C.P. 60(b)(5). *Canton Oil*, 731 P.2d at 694; *see also State Farm Mut. Auto. Ins. Co. v. McMillan*, 925 P.2d 785, 791 (Colo. 1996) (holding that, in limited instances, a change in the controlling law could constitute an extraordinary circumstance for purposes of C.R.C.P. 60(b)(5)); *Cox v. Horn*, 757 F.3d 113, 122 (3d Cir. 2014) (explaining that the court has "long employed a flexible, multifactor approach . . . that takes into account all the particulars of a movant's case" when considering motions under the residual provision of federal Rule 60(b)).

¶ 36     Given C.R.C.P. 60(b)(5)'s flexible standard, there may be a case to be made that, in the aggregate, the issues the court identified in its oral ruling — and potentially others that the court did not

articulate at that time — constitute an extraordinary circumstance or extreme situation justifying relief. But the trial court did not make that case. Indeed, it did not expressly acknowledge C.R.C.P. 60(b)(5) or make specific findings that the facts of this case satisfy the standard for setting aside the default judgment under the residual provision. *See Buckmiller*, 727 P.2d at 1115 ("We hold that the trial court should have resolved Buckmiller's [R]ule 60(b) motion in accordance with clearly-defined legal criteria applicable to such a motion and that its failure to do so constituted reversible error.").

¶ 37     We decline the Fellers' invitation to determine in the first instance whether the court's reasons for granting relief rise to the level of extraordinary circumstances for purposes of C.R.C.P. 60(b)(5). For one thing, an appellate court is ill-suited to conduct the equitable, fact-intensive inquiry called for by C.R.C.P. 60(b)(5). *Cf. Harriman v. Cabela's Inc.*, 2016 COA 43, ¶¶ 76-77 (reversing the trial court's denial of a C.R.C.P. 60(b)(1) motion and remanding for further findings because appellate courts may not undertake the necessary fact-intensive inquiry Rule 60(b) requires). But also, as the Fellers' counsel acknowledged at oral argument, the trial court's findings are ambiguous. For example, the trial court identified

"[Steven] Kraxberger's willingness and demonstrated ability to cooperate with the defense" as a factor supporting its ruling. But it is unclear whether the trial court's comment refers to Steven Kraxberger's demeanor at the hearing on the motion to set aside the default, his prior involvement in the litigation in connection with the subpoena, or something else entirely. The court's comments at the damages hearing are likewise open to interpretation. We are unsure whether the court thought the original judgment could not stand because Stephanie Feller was not credible in detailing the Fellers' expenses or because it had committed a legal error by failing to scrutinize the Fellers' original request for a default judgment in the amount of $104,396.49.

¶ 38 Whether the facts of this case present the type of extraordinary circumstances entitling Kraxberger to relief under C.R.C.P. 60(b) is for the trial court to decide in the first instance. Accordingly, we vacate the court's order setting aside the default judgment and its subsequent damages judgment and remand this matter for the court to reconsider Kraxberger's motion anew under the correct legal standard. When reconsidering the motion to set aside the default, the trial court should identify the applicable

provision of C.R.C.P. 60(b) and explain the factual findings and legal conclusions supporting its ruling. The court may, in its discretion, hold an additional evidentiary hearing to resolve any remaining factual issues.

## III. Disposition

¶ 39 The trial court's order setting aside the default judgment and its subsequent judgment are vacated, and the case is remanded for further proceedings.

JUDGE DUNN and JUDGE MOULTRIE concur.