25CA0143 Marriage of Laffaye 04-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0143
La Plata County District Court No. 14DR2163
Honorable Kim S. Shropshire, Judge

---

In re the Marriage of

Ann Marie Laffaye,

Appellee,

and

Patrick William Laffaye,

Appellant.

---

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE LUM
J. Jones and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

---

Hinds and Hinds Family Law, P.C., C. Darin Jensen, Greenwood Village, Colorado, for Appellee

The Law Firm of Lisa Ward, LLC, Lisa Ward, Donald Lawrence, Jr., Durango, Colorado, for Appellant

¶ 1    This post-decree dissolution of marriage appeal involves a dispute over the distribution of funds from a deferred compensation account.  Husband, Patrick William Laffaye, appeals the district court's order modifying the terms of the parties' separation agreement based on its unconscionability.  He also appeals the portion of the order declining to award him attorney fees under section 14-10-119, C.R.S. 2025.  We affirm in part, reverse in part, and remand for further proceedings.

## I.    Background

¶ 2    Husband and Ann Marie Laffaye (wife) jointly petitioned for divorce in 2014.  Neither party was represented by counsel.  The parties entered into a separation agreement and a parenting plan, which included the following relevant provisions:

- Wife shall receive 100% of the "Distribution of Funds, Shares, etc., within the" Westport Strategies Retirement Account.

- "The Westport Strategies Retirement Account (a.k.a. Gartner Deferred Compensation Account) is to be used exclusively for post-secondary education as outlined in Section D(4) of the Parenting Plan.  Expense reports are to

be submitted to [husband] semi-annually.  Any shortages or overages will be divided equally by both parties."

- "Post-secondary education expenses for the child(ren) shall be divided with [wife] paying 100% and [husband] paying 0% of" tuition, room and board, books, fees, travel, and spending money.

¶ 3    Sometime later, the parties discovered that the Westport Strategies Retirement Account (Gartner account) couldn't be accessed for regular withdrawals or distributions without significant tax penalties.  (The parties were apparently unaware of the tax penalty issue when they entered into the agreement.)  Wife then paid the children's colleges expenses out-of-pocket from her separate resources.  Wife also took one distribution from the Gartner account in January 2020 (2020 distribution).  The gross amount of the distribution was $118,820.84; however, wife received only $76,247.00 after tax withholdings.  (It's unclear from the record whether wife used the funds from this distribution to reimburse herself for college expenses she had paid from other sources or whether the funds went directly to college expenses.)

2

¶ 4　　After the children finished their postsecondary education, husband asked wife for his share of the remaining balance of the Gartner account.  However, the parties disagreed about how the account would be divided.  Husband then filed a contempt motion, alleging that wife hadn't complied with her obligations under the separation agreement.  The court declined to find wife in contempt because the separation agreement lacked sufficient detail regarding the date upon which wife was supposed to pay husband his share.  The court advised the parties, "[I]f the parties believe the execution of the separation agreement is not possible as written, the parties may seek additional orders of the Court to effectuate the intent of the separation agreement.  The party seeking the Court's intervention must file a motion."

¶ 5　　Wife filed a "Motion for the Court to Resolve Remaining Issues with Separation Agreement and Declaratory Relief Pursuant to C.R.C.P. 57," in which she requested that the court address compensation owed for her out-of-pocket payments for college expenses, the valuation date of the Gartner account, the tax implications of future distributions from the Gartner account, and

how the parties should account for the 2020 distribution. The court set the matter for a hearing.

¶ 6 As we understand it, the parties appear to have broadly agreed that (1) their separation agreement says that wife would pay the children's college expenses from the Gartner account and that the parties would "equally" divide what was left in it (though they disagreed about the details of that division) or be equally responsible for any deficit; (2) wife instead made the vast majority (if not all) of the college expense payments from other sources; and (3) the court's job at the hearing was to determine how much money from the Gartner account was due from wife to husband after accounting for the 2020 distribution and the payment of college expenses from other sources.

¶ 7 As relevant here, the parties stipulated to or disputed the following facts heading into the hearing:

- The parties stipulated that wife paid $585,322.32 for the children's college expenses, for which the parties were equally responsible.

- Wife claimed she paid additional college expenses; husband disputed the classification, necessity, or

4

reasonableness of these additional payments (disputed expenses).

- The parties stipulated that husband paid $9,003.96 in college expenses and was entitled to a credit in that amount.

- The parties disputed how to account for the 2020 distribution in the division of the Gartner account. Husband argued (as he does on appeal) that he should receive a credit for the gross amount of the 2020 distribution. Wife argued that the court should consider only the net amount.

- The parties stipulated that husband was entitled to a payment of half of the Gartner account funds after the court determined how to account for the college expenses and the 2020 distribution (remaining funds).

- However, the parties disagreed as to the "valuation date" for the Gartner account. Husband argued that he should receive half of the remaining funds as of the date of the hearing. Wife argued that husband should receive half of the remaining funds as of "December 2022" (the end of

the year in which wife made the final college expense payment).

- As best we understand the record, the parties agreed that, as a matter of fact, any future distributions from the Gartner account would be subject to tax withholding. The parties disagreed about how to allocate or account for the tax burden on the remaining funds. Husband argued that he should receive the gross amount of his share of the remaining funds tax free. Wife argued that husband's share of the remaining funds should be reduced by her marginal tax rate.

- Wife couldn't take any distributions from the Gartner account at the time of the hearing. Thus, the parties agreed that if wife had to pay the remaining funds to husband in the near term, she would pay them from another source.

¶ 8 The district court set the matter for a half-day hearing and gave the parties equal time to present their evidence. Husband's counsel conducted extensive cross-examination of wife, and as a result, husband wasn't able to testify. The district court denied

husband's request for additional time to testify and denied his request for attorney fees under section 14-10-119 because husband didn't present any evidence of his financial resources during the hearing.

¶ 9 After the hearing, the court issued an "Order re: Motion for Court to Resolve Remaining Issues with Separation Agreement and Declaratory Relief Rule 57" (declaratory relief order). The court noted, "The agreement and decree are both 'silent on the power to modify,' and therefore, pursuant to [*In re Marriage of Thompson,* 640 P.2d 279, 281 (Colo. App. 1982)], the Court finds it has the authority to consider the terms for 'present unconscionability' and therefore, possible modification." After also noting that the separation agreement failed to state the method by which each party would receive half of the Gartner account and whether the remaining funds would be distributed before or after tax, the district court ruled, "The Court must issue orders to give effect to as many of the terms of the agreement while maintaining the fair and conscionable requirement of an agreement." The court entered the following orders:

- *Valuation date.* The court valued the Gartner account as of December 31, 2022. The balance of the account on that date was $832,796.65. Thus, the court concluded that each party had a "starting share" of $416,339.30.[1]

- *Disputed college expenses.* The court concluded that $24,622.63 of the disputed expenses were properly classified as college expenses that should be accounted for in the division of the Gartner account. Thus, the total amount of college expenses paid by wife was $609,945.00, and each party was responsible for $304,972.50.

- *2020 distribution.* The court concluded that, based on the language of the separation agreement, the parties "intended for any distribution to be of *equal* benefit to both parties." The court also recognized that had wife continued to take distributions to pay the children's college expenses, the Gartner account would have been

---

[1] It appears the district court miscalculated one-half of $832,796.65 by roughly $59.00. Neither party raises this de minimis error on appeal. We use the court's "starting share" calculation of $416,339.30 for the remainder of this section for consistency.

8

substantially more depleted due to the tax withholdings on the distributions. Thus, the court ordered that the net amount of the 2020 distribution be credited toward the college expenses with husband receiving "credit" for $38,123.50 — one-half of the net distribution.

¶ 10 The following table demonstrates how the court calculated husband's share of the gross remaining funds.

| Funds | Amounts ($) |
|---|---|
| One-half of Gartner account value as of December 31, 2022 | 416,339.30 |
| One-half of total college expenses paid by wife | -304,972.50 |
| Credit for one-half of net 2020 distribution | +38,123.50 |
| Credit for husband's direct payment of college expenses | +9,003.96 |
| Husband's share of remaining funds of Gartner account | 158,494.26 |

¶ 11 Regarding taxes, the court noted that the separation agreement was silent about the allocation of the tax burden on the remaining funds. However, given the agreement's directive to divide the remaining funds in the Gartner account "equally," the court ordered that each party would be responsible for the taxes on their respective portions of the remaining funds. Because the parties

9

stipulated that no distributions could be taken from the Gartner account at the time, the court ordered husband's portion of the remaining funds be paid to him from wife's separate 401(k) account through a qualified domestic relations order (QDRO).

¶ 12 Husband contends that the court erred by (1) modifying the parties' separation agreement based on unconscionability; (2) using the net amount of the 2020 distribution in its accounting; (3) denying him additional time to testify during the half-day hearing; and (4) denying his request for attorney fees under section 14-10-119. We address each argument in turn.

## II. The Separation Agreement

¶ 13 Husband first asserts that (1) the district court erred by modifying the terms of the separation agreement regarding the Gartner account; (2) he was entitled to 50% of the remaining funds as of the date the account was divided; and (3) he was entitled to receive his share of the remaining funds tax free. We agree that the court erred by modifying the separation agreement based on unconscionability, but we don't agree that the court was required to implement husband's proposed division.

### A. Modification of the Separation Agreement

#### 1. Standard of Review and Applicable Law

¶ 14    We review de novo whether the court applied the correct law. *In re Marriage of Young*, 2021 COA 96, ¶ 9.

¶ 15    Section 14-10-112(1), C.R.S. 2025, authorizes parties to enter into a separation agreement as part of their dissolution of marriage proceedings. A separation agreement is a contract between parties to a marriage. *In re Marriage of Manzo*, 659 P.2d 669, 671 (Colo. 1983). Unless the court finds the separation agreement to be unconscionable, the property division and spousal maintenance terms of the agreement are binding on the court. § 14-10-112(2); *In re Marriage of Salby*, 126 P.3d 291, 295 (Colo. App. 2005).

¶ 16    After the separation agreement is incorporated into a decree of dissolution of marriage, "the provisions as to property disposition" may not be revoked or modified "unless the court finds the existence of conditions that justify the reopening of a judgment." § 14-10-122(1)(a), C.R.S. 2025; *Camack v. Camack*, 62 P.3d 1097, 1099 (Colo. App. 2002); *In re Marriage of Seely*, 689 P.2d 1154, 1159 (Colo. App. 1984).

## 2.    Analysis

¶ 17    The district court erred to the extent that it purported to modify the separation agreement due to "present unconscionability." The agreement became enforceable as a court order when it was incorporated into the decree of dissolution. *See* § 14-10-112(2). Thus, the agreement can't be modified except under C.R.C.P. 60.[2]

¶ 18    However, this doesn't end our analysis because — as wife correctly points out — the district court could have *interpreted* the parties' separation agreement to give effect to their intent. We turn to that issue next.

### B.    Interpretation of the Separation Agreement

#### 1.    Applicable Law and Standard of Review

¶ 19    When parties disagree about the meaning of their separation agreement, a court can enter orders interpreting the agreement as it would interpret a contract. *See In re Marriage of Crowder*, 77 P.3d

---

[2] To the extent wife contends that we can affirm the court's order based on C.R.C.P. 60(b)(4), her argument is undeveloped, and we don't consider it. *See Antolovich v. Brown Grp. Retail, Inc.,* 183 P.3d 582, 604 (Colo. App. 2007) (appellate courts don't address undeveloped arguments).

858, 860-61 (Colo. App. 2003). "In construing a contract, our goal is to give effect to the intention of the parties as determined primarily from the language of the contract itself." *Id.* We give words and phrases their plain and ordinary meanings. 802 *E. Cooper, LLC v. Z-GKids, LLC*, 2023 COA 48, ¶ 21. And we construe the agreement as a whole and avoid interpreting specific terms and phrases in isolation. *See Rogers v. Westerman Farm Co.*, 29 P.3d 887, 898 (Colo. 2001).

¶ 20     If the language of the agreement is plain, clear, and unambiguous, the court must enforce the agreement as written. *Randall & Blake, Inc. v. Metro Wastewater Reclamation Dist.*, 77 P.3d 804, 806 (Colo. App. 2003). However, if a separation agreement is ambiguous, the district court must consider extrinsic evidence to determine the parties' mutual intent at the time of contracting. *Pepcol Mfg. Co. v. Denv. Union Corp.*, 687 P.2d 1310, 1314 (Colo. 1984). "This extrinsic evidence may include any pertinent circumstances attendant upon the transaction, including the conduct of the parties under the agreement." *Id.*

¶ 21     The mere fact that the parties disagree as to the meaning of contract terms does not itself create an ambiguity. *In re Marriage of*

*Thomason*, 802 P.2d 1189, 1190 (Colo. App. 1990). A separation agreement is ambiguous if it is susceptible to more than one reasonable interpretation. *See Crowder*, 77 P.3d at 861.

¶ 22    The interpretation of a separation agreement and the determination whether the agreement is ambiguous are questions of law that we review de novo. *Id.* at 860; *In re Marriage of Williams*, 2017 COA 120M, ¶ 11. If an agreement is ambiguous, the determination of the parties' intent is a question of fact. *Gagne v. Gagne*, 2014 COA 127, ¶ 52.

## 2.    Analysis

¶ 23    We agree with wife that the separation agreement is ambiguous as to both the valuation date and the allocation of the tax burden on the remaining funds. However, because the court didn't make sufficient findings about the parties' intent at the time of contracting for us to affirm on that basis, we remand the case for further proceedings.

### a.    Valuation Date

¶ 24    The separation agreement says that the Gartner account will be used exclusively for postsecondary education and that any "shortages or overages will be divided equally by both parties."

14

¶ 25    Husband contends that the district court erred by setting December 31, 2022, as the valuation date for the Gartner account's remaining funds because the separation agreement entitles him to "half of that account, on the very date it is paid out to [him], including any increases in the value of his half." Husband's interpretation is reasonable, but we disagree that it is the *only* reasonable interpretation.

¶ 26    As the district court observed, the agreement doesn't say anything about the date on which the "shortages or overages" (i.e. the remaining funds) will be calculated. The court adopted wife's proposed valuation date of December 2022, reasoning that (1) husband originally asked to divide the account upon the children's graduation in July 2022 and (2) post-divorce increases in account value typically belong to the party to whom the account is allocated. This interpretation is also reasonable, given the separation agreement's silence about the valuation date and its directive that wife "shall receive 100% of the Distribution of Funds, Shares, etc." within the account.

b. Allocation of Tax Burden on Remaining Funds

¶ 27    Wife urges us to affirm the district court's conclusion that the parties' intent was to share the tax burden on the remaining funds because the separation agreement says that the parties will "equally" divide the "shortages or overages" in the Gartner account. Husband contends that the separation agreement unambiguously requires that wife bear the entire tax burden and that he receive his share tax free. We again conclude that the agreement is ambiguous because both parties' interpretations are reasonable.

¶ 28    We agree with wife and the district court that the word "equal" generally connotes an intent that each party will receive "the same measure, quantity, amount, or number" as the other. Merriam-Webster Dictionary, https://perma.cc/NY5N-9MQS. If husband were to receive his portion of the remaining funds tax free while wife was solely responsible for paying the taxes on both her portion and husband's portion of the funds, their respective shares would be unequal.

¶ 29    However, we cannot read the Gartner account provisions in isolation. *See Rogers*, 29 P.3d at 898. As husband observes, the parties expressly agreed to divide a different retirement account in

16

wife's name by using a QDRO. A QDRO "is a device created by the IRS by which a participant's retirement funds can be transferred from a participant to a . . . former spouse." *Thomason*, 802 P.2d at 1190. The parties' QDRO provided that husband would be responsible for the federal and state taxes on any distributions of his share of the funds. This demonstrates that the parties were aware that at least some types of retirement accounts required the allocation of tax burdens and that they allocated those burdens equally where they saw fit. Because the parties didn't make any similar provision for the tax burden on the remaining funds, husband's interpretation that the parties intended to divide the remaining funds without regard to tax consequences is also reasonable.

### c. Remand

¶ 30 The district court seems to have recognized these ambiguities in the separation agreement when it said that the agreement was "deficient in detail" and did "not state . . . the method by which each party w[ould] receive their half" of the remaining funds. However, apart from some limited information about the parties' course of conduct regarding the valuation date, the court didn't receive (and

17

thus, didn't consider) extrinsic evidence of the parties' intent about either the valuation date or the allocation of tax burdens at the time of contracting.

¶ 31    We therefore reverse the portions of the order relating to the valuation date and tax allocation, and we remand for the district court to take additional evidence and make additional findings[3] about the parties' intent at the time they entered into the separation agreement. The district court should then recalculate and divide the remaining funds consistent with its intent findings.

## III.    2020 Distribution

¶ 32    Husband next argues that the district court erred by "crediting" him with only half of the *net* amount of the 2020 distribution. This contention is tied to his argument that the district court erred by allocating some of the tax burden on distributions from the Gartner account to him. Because we reverse the portion of the order allocating the tax burdens, we reverse this

---

[3] When a contract is ambiguous, the parties' intent is a question of fact, *E. Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005), that we cannot resolve in the first instance, *Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 19 (Appellate courts "don't (and, indeed, can't) make findings of fact.").

18

portion as well. On remand, the district court should reconsider how to account for the 2020 distribution after it makes findings about the parties' intent regarding the tax burden.

## IV. Due Process

¶ 33 Husband next argues that the district court abused its discretion and denied him due process of law by refusing him additional time so that he could testify during the hearing. Because of our resolution of husband's first argument, we need not address this issue (except as relevant to the issue of attorney fees below).

## V. Attorney Fees

¶ 34 Lastly, husband argues that the district court erred by declining his request for attorney fees under section 14-10-119. We disagree.

### A. Preservation

¶ 35 We first reject wife's contention that this argument is unpreserved because husband failed to present evidence at the hearing to support his attorney fees request. In its declaratory relief order, the district court noted, "The parties dispute whether one party should pay the other parties' attorney's fees pursuant to [section] 14-10-119," and it denied the request. Husband thus

properly preserved this issue for our review. *See Berra v. Springer & Steinberg, P.C.,* 251 P.3d 567, 570 (Colo. App. 2010) ("[T]o preserve [an] issue for appeal all that [i]s needed [i]s that the issue be brought to the attention of the trial court and that the court be given an opportunity to rule on it.").

### B.     Applicable Law and Standard of Review

¶ 36     Section 14-10-119 empowers the district court to equitably apportion costs and fees between parties based on their relative economic circumstances. *In re Marriage of Gutfreund,* 148 P.3d 136, 141 (Colo. 2006). When requesting attorney fees under section 14-10-119, the party must present evidence of the reasonableness of the fees at the time of the hearing on the matter for which the attorney fees are sought. C.R.C.P. 121, § 1-22(2) cmt. 2; *In re Marriage of Connerton,* 260 P.3d 62, 67 (Colo. App. 2010).

¶ 37     We review a district court's decision on whether to award fees under section 14-10-119 for an abuse of discretion. *In re Marriage of Davis,* 252 P.3d 530, 538 (Colo. App. 2011).

### C.     Analysis

¶ 38     Because husband presented no evidence on the reasonableness or necessity of his request for attorney fees at the

hearing in which he was requesting fees, we perceive no error in the district court's denial of his request.

¶ 39　　To the extent that husband argues that he was prevented from presenting such evidence due to time restrictions, we reject his argument because the offers of proof his attorney made when asking for more time contained no information about husband's present economic circumstances. *See Itin v. Ungar*, 17 P.3d 129, 136 (Colo. 2000) ("An offer of proof must sufficiently inform the court of the nature and substance of the proposed evidence both to enable the trial court to exercise its discretion . . . and to provide a basis for appellate review.").

## VI.　Appellate Attorney Fees

¶ 40　　Husband requests an award of his appellate attorney fees under section 14-10-119. The district court is better situated to address the necessary factual determinations related to this request. *See In re Marriage of Leverett*, 2012 COA 69, ¶ 28. We therefore exercise our discretion under C.A.R. 39.1 and direct the district court to address whether husband is entitled to an award of such fees and, if so, in what amount. *See In re Marriage of Yates*, 148 P.3d 304, 318 (Colo. App. 2006).

## VII.  Disposition

¶ 41     The order is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

JUDGE J. JONES and JUDGE MEIRINK concur.